STATE ex rel. CITY OF MINNEAPOLIS and Another v. DISTRICT COURT OF FOURTH JUDICIAL DISTRICT and Others.[1]

May 10, 1901.

Nos. 12,489—(19).

**City of Minneapolis—Park Board.**

> Sp. Laws 1889, c. 30, as amended by chapter 103, same laws, confers authority upon the board of park commissioners of the city of Minneapolis to contract for the conveyance of land to the city for park purposes in consideration of the exemption of other contiguous lands of the owner from assessments for park purposes, to the amount agreed upon.

[1] Reported in 86 N. W. 15.

#### Contract—Exemption from Taxation.

> Such exemptions are not limited by the act to a single assessment made with reference to the property so purchased, but include all assessments, present or future, and also instalments not yet entered for collection, but which have been assessed prior to the execution of the contract.

#### Contract—Existing Assessment.

> A certain deed examined, which contained a contract to the effect that the consideration of certain lands conveyed to the city was $100,000, to be paid by the exemption of certain other contiguous lands of the grantors to the entire amount of $100,000. *Held*, that the contract embraced an assessment which had already been made against such remaining contiguous property, but which had not been entered upon the tax books for collection.

Certiorari to the district court for Hennepin county, Honorable Charles M. Pond, a judge thereof, and others, to review a judgment of said court in proceedings for the collection of delinquent real estate taxes for the year 1895. Judgment affirmed.

*F. H. Boardman*, County Attorney, and *C. J. Rockwood*, for relators.

*Koon, Whelan & Bennett*, for respondents.

LEWIS, J.

On June 15, 1891, William S. King and wife executed and delivered to the city of Minneapolis a deed to a large tract of land in that city, for the consideration of $100,000 [to be paid by exempting from taxation for park purposes to that amount other contiguous land of the grantor], and other considerations to the effect that the city accept such land upon an agreement to make certain improvements in its park system. The deed contained a provision that the land so conveyed should revert to the grantors if the grantee should fail to carry out the conditions upon which the grant was made. The lands so exempted were located in the vicinity of and adjacent to the lands conveyed to the city for park purposes, and were fully described in the deed. Shortly before the execution and delivery of this deed, the lands so exempted had been assessed by the park commissioners for improvements already ordered to the amount of about $9,000, no part of which

had then been carried out upon the tax books. As provided by Sp. Laws 1889, c. 30, such assessment was divided into ten equal instalments, each to be collected annually. In 1891 the first instalment was carried out upon the assessment books by the county auditor and levied upon the lands in question, and was subsequently set aside by the court. The 1892 instalment appears to have been paid by the owners of the land, under protest, for the purpose of securing the record of certain deeds transferring a part of the lands. The third and fourth instalments, for the years 1893 and 1894, were neither paid nor carried out upon the county tax books. In 1895 the fifth instalment was levied against the land, and, having been duly entered by the county auditor in the tax proceedings in regard thereto in 1897, the owners answered, setting up the fact that the lands were exempt under the original deed; also pleading in bar to such proceedings the judgment of the court on the prior instalment of 1891. The matter was heard, and the trial judge ordered judgment for the owners, setting aside the assessment, and refusing to certify the case to this court, whereupon the state brought the matter here for review by writ of certiorari.

It will not be necessary to consider the effect of the judgment entered in relation to the 1891 instalment as a bar to the subsequent proceedings involved in this action, inasmuch as we have decided in favor of respondents all questions raised with reference to the validity of that judgment, upon the merits. This leaves but two propositions for consideration: (1) Under the then existing law, did the board of park commissioners of the city of Minneapolis have authority to enter into a contract accepting the lands upon the condition and for the consideration that other lands of the grantors, adjacent to those conveyed, should be exempt from an assessment already levied against such lands? (2) If, under the law, the board had such authority, did the contract which was entered into with the grantors, as evidenced by the terms of the deed, have the effect of exempting such lands from an assessment already levied for an improvement already ordered?

1. Sp. Laws 1889, c. 30, § 1, establishes the board of park commissioners, provides a common seal, and authorizes such board to

enter into contracts on behalf of the city of Minneapolis, within the purposes of the act. Section 2, as amended by chapter 103 of the same laws, provides that the board shall have the power, and that it shall be its duty, to devise, adopt, and maintain parks and parkways in and adjacent to the city of Minneapolis, and from time to time to add thereto; to designate lands and grounds to be appropriated and used for such purposes; to cause the same to be platted; and to hold, improve, govern, and administer the same for such purposes. The board has the power and is authorized to obtain title, for and in the name of the city of Minneapolis, to any lands so designated by it for the purpose of the act, by gift, devise, purchase, or lease. And it is further provided that the board may enter into any contract in the name of the city for the purchase of any lands, and may provide for their payment at such time and in such manner as it deems best. It is also made its duty to pay on such contracts of purchase an amount equal to the sum or sums realized from assessments. Chapter 30, supra, contains general provisions for the condemnation of land for park purposes, and the assessment of property for acquiring land and improving the park system. Subdivision 9 of section 3 provides that land and property required to be taken for such purposes shall not be appropriated until the damages awarded therefor shall have been paid to the owner thereof, or his agent. Section 4 provides for the appointment of park assessors, and for the assessing of benefits accruing from the purchase of land and the improvement of the park, and contains the further proviso that,

"In case of the purchase of lands for any such parks or parkways, or of any part thereof, it shall be competent for said board of park commissioners to agree with the vendor or vendors of the lands so purchased upon a price therefor, which may in addition to the purchase price thereof include exemption from an assessment for benefits upon any remaining contiguous or adjacent lands owned by such vendor or vendors, the amount of which exemption shall be specifically agreed upon in the contract or conveyance: provided in all such cases an accurate description shall be furnished to said board, by the party to be exempted * *. * which description shall be filed in the office of the secretary of said board, and a certified copy thereof shall be recorded in the office of the register of deeds of Hennepin county."

Relator's position is that the general term "exemption" has a clear legal significance, and, as used in this act, does not embrace a lien or burden previously imposed; and, further, that the use of the words "an exemption" limits the board's power to one assessment, and that such assessment can be no other than the one made on account of the acquisition of the land itself at the time the contract of exemptions was entered into, and that therefore the act does not authorize a contract reaching back to an assessment already levied, or one for general assessments that may be made for the acquisition of property or improvements for some future time.

If this proviso were to be read as though standing alone, regardless of the other provisions of the act, the board's power might, by the language referred to, be limited in the manner stated. But we must also consider the scope and purpose of the law, and that it makes the board of park commissioners practically a body corporate, endowed with power to acquire land and make contracts; that the object of acquiring property is to improve the same for the general benefit of the city; that the board holds the power to pay for property thus acquired, either in money, to which end assessments are levied, or by the relinquishment of land from assessments, in whole or in part, as a consideration for the acquisition of such property. Referring more specifically to the language of the act, we quote as follows:

"It shall be competent for said board of park commissioners to agree with the vendor or vendors of the land so purchased upon a price therefor, which may, in addition to the purchase price thereof, include exemption from an assessment for benefits upon any remaining contiguous or adjacent lands owned by such vendor or vendors, the amount of which exemption shall be specifically agreed upon in the contract or conveyance."

This language implies general power in the board to contract for an exemption as to remaining contiguous lands from any assessment or assessments, whether for an improvement then in contemplation upon the lands acquired, or to an improvement already undertaken, but not paid for, or with reference to improvements and acquisition of property in the future. The words "an

assessment," when considered in connection with the general power of the board and the purpose of making the exemption, cannot be restricted to a single assessment, but refer, rather, to any assessment that may be necessary to accomplish the object in view. And why should not the board's power to make exemptions from assessments reach back and cover those instalments which had not been carried out upon the tax books? There is nothing in the language of the act preventing the board from including in a contract of exemptions property on which an assessment has already been made.

Admitting that an assessment becomes a lien upon the land at the time of confirmation by the court, yet if, under sale proceedings for nonpayment, the rights of other parties do not intervene, the board and landowner stand in the same position, so far as their relative rights are concerned, after an assessment is made as they would were the assessment made subsequent to the time of the contract. But, from another point of view, was the method of procedure here provided, strictly speaking, an exemption from a lien? It simply amounts to this: That it enables the board to accomplish by direct process the same object which would otherwise have to be obtained through an indirect method, —that is, instead of paying the landowner money for his property, procured by means of assessment, the board is empowered to release assessments to the grantor in an amount equal to the consideration, thus attaining the same result, in that the city obtains the land, and the owner receives the consideration. It is a simple and direct procedure for the interest of both parties, and, upon this view, is not subject to any of the legal embarrassments suggested by relators.

2. We now consider whether or not the board, by virtue of the contract set forth in the King deed, effectually exempted the lands in question from the assessment which had already been made at the time of its execution. Section 4, supra, provides that the amount of the exemption shall be specifically agreed upon in the contract of conveyance, and that an accurate description of the land shall be furnished to the board, and recorded in the office of the register of deeds. By recurring to the provision of

the deed, it will be seen that the consideration for the transfer of the property to the city was $100,000, and that it was expressly provided that such consideration was to be paid by the performance of the covenants on the part of the city, viz., the improvement in certain respects of the park system, and the exemption of certain other contiguous and adjacent lands belonging to the grantors, to the amount of the entire $100,000. To quote the language of the deed:

"And the said party of the second part, for itself, its successors and assigns, does hereby expressly agree to and with said parties of the first part, their heirs and assigns, that in consideration of the covenants of this deed, and as payment of the lands hereinbefore described, that the lands hereinafter described, and owned by said William S. King, shall be exempt from all special taxes and assessments for park and parkway purposes until such exemptions shall amount in the aggregate to the consideration hereinbefore specified, to wit: The sum of one hundred thousand dollars ($100,000), which amount shall from time to time be determined in the following manner:

"When special assessments shall be made for park purposes, the assessor shall assess lands hereinafter described in the same manner as if this exemption had not been made, and the amount of said assessments, as confirmed by the court, shall be conclusive between the parties hereto; but said assessments shall not be placed upon the tax books for collection until such assessments amount, in the aggregate, to more than one hundred thousand dollars ($100,000), and then only for the surplus over and above said sum of one hundred thousand dollars ($100,000)."

Relators select the last paragraph of this excerpt, and argue that the words, "When special assessments shall be made," etc., refer only to the future, and that there is nothing in the contract to indicate that the parties referred to the assessment already made. But such restriction is unwarranted when read in connection with the preceding language. The words are:

"* * * shall be exempt from all special taxes and assessments for park and parkway purposes until such exemption shall amount, in the aggregate, to the consideration hereinbefore specified."

When the entire contract is considered, it is evident that refer-

ence was had not only to future assessments, but also to the assessment already levied.

Again, if by the terms of the instrument there could be any doubt as to its meaning, consider the position of the parties at the time of the execution of the contract. The grantors were conveying to the city, for park purposes, large tracts of land, the acknowledged value of which was $100,000. They were to receive no money, but only compensation in the way of benefits to their adjacent property; and this was to be accomplished by the further improvement of the park system in certain directions, and by the exemption of other property in the vicinity, to the extent of the value of the property granted. In the face of these conditions, is it to be presumed that the grantors intended to limit the exemption to assessments to be made in the future, or to limit it to an assessment to be made for the benefit of an improvement in reference to the property granted to the city by the deed? Is it reasonable that the parties contemplated that the assessment which had already been made, although not carried out upon the tax books, should not be included within the exemptions?

The parties must be presumed to have acted with reference to the conditions existing at the time of making the contract. Upon the one hand, the board was seeking to extend its park system by the acquisition of territory, and, in order to avoid the necessity of raising money by the indirect method of levying assessments, proposed to relinquish other property from assessments in an amount equal to the consideration agreed on. On the other hand, the grantors may be presumed to have contemplated avoidance of the payment of the instalments about to be collected. It may be presumed that the very object of entering into the contract at that time by the grantors was to relieve the adjacent remaining property from any burdens in the way of assessments for a considerable time to come. The lands exempted were described in the deed. The parties have acted on the theory that the lands were exempt, and we conclude that it was the purpose, not only of the grantors, but of the park board, that all of the lands described as exempted should be exempt not only from any and

all future assessments that might be levied, but also from the assessment which had been made prior to the execution of the deed, but not yet carried out upon the tax books.

Judgment affirmed.