[No. 10226.   Department Two.   September 12, 1912.]

Turner Investment Company, *Appellant*, v. The City of
Seattle, *Respondent*.[1]

Municipal   Corporations — Improvements — Assessments—Con-
tracts With Owner—Ultra Vires.   A city cannot contract with
part of the property owners in a contemplated improvement district
to form the district and eliminate their property from assessment
in consideration of their doing the necessary grading of certain
streets, accepting a nominal sum as damages for their property
taken or damaged by street extensions and changes of grade in the
district; such contract being *ultra vires* and void.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered November 3, 1911, upon sustain-
ing a demurrer to the complaint, dismissing an action on
contract.   Affirmed.

*William Parmerlee*, for appellant.

*James E. Bradford* and *Howard M. Findley*, for respond-
ent.

Ellis, J.—Action to recover damages for breach of con-
tract.   The court sustained a demurrer to the complaint
upon the ground that it failed to state a cause of action.   The
plaintiff electing to stand upon its complaint, the court
entered a judgment dismissing the action with costs.   The
plaintiff has appealed.

The complaint in substance alleges; that the defendant,
by Ordinance No. 13,513, authorized its board of public
works to make a contract with the owners of certain lots and
parcels of land abutting upon that portion of Third avenue
and Third avenue produced, from the north line of Pine
street to the south line of Virginia street, and that portion
of Stewart and Olive streets lying between the easterly line
of Second avenue and the westerly line of Fourth avenue.   A

[1]Reported in 126 Pac. 426.

copy of the contract is attached to, and made a part of, the complaint. It recites, by way of preamble, that it is deemed necessary by the city and the contracting property owners that Third avenue, within the above mentioned limits, be widened and extended to a 90-foot street, by adding 12 feet in width on each side from the north line of Pine to the south line of Stewart streets, and taking a strip 90 feet in width as an extension of Third avenue from the north line of Stewart to the south line of Virginia street, and that the same, together with the portions of Stewart and Olive streets above mentioned, be regraded to the elevations established in Ordinance No. 13,513; that the city intends to immediately begin condemnation proceedings to fix the damages caused to abutting property, and that the district is intended to constitute a part of a much larger district, the lines of which are also given; that it is the desire of the contracting property owners, at their own expense, to remove the dirt necessary to be moved in making the regrade as soon as possible, to avoid the delay attendant upon the larger improvement. It is then agreed that the city, upon a seventy-five per cent majority petition, shall establish by ordinance the larger improvement district, and instruct the corporation counsel to immediately institute condemnation proceedings for the taking of the necessary property and to fix the damages caused by the change in grades, and that the condemnation district shall include all of the property owned by the contracting property owners; that in the condemnation proceedings an award of $1 shall be made by the jury in favor of each contracting property owner as compensation for the property taken and for the damages caused by the change of grades; that the property of the contracting owners abutting on Third avenue, Third avenue produced, Stewart and Olive streets, within the above mentioned limits, "shall be eliminated from any assessment to pay for the removal of earth in accomplishing the regrade of said streets and avenues" (with certain immaterial exceptions); that the contracting prop-

erty owners are granted the privilege of removing earth
necessary to be removed in grading the portion of the streets
in question at their own expense, and without expense to the
city or the remaining portion of the proposed improvement
district; that the contracting property owners bind them-
selves, their heirs and assigns to accept an award of $1 as
full compensation and damages, and agree to remove all of
the earth necessary to be removed in grading the streets in
question at their own expense, between May 1, 1906, and
May 1, 1907.

The complaint then alleges plaintiff's ownership of one
of the lots included in the contract, and that it has a corres-
ponding interest in the contract; that the plaintiff and all of
the contracting property owners fully complied with all of
the terms and conditions and performed and executed the
contract in time and manner as therein provided; that the de-
fendant, upon a seventy-five per cent majority petition there-
for by ordinance, established the large improvement district
mentioned in the contract, including therein the property of
the contracting owners, and instituted condemnation pro-
ceedings to fix the compensation for taking of property and
damages for change in grades.

As a first breach of the contract it is alleged that the de-
fendant wholly failed to carry out its agreement, in that no
valid judgment or award was caused to be made in favor of
the plaintiff, and that had the award, as provided in the con-
tract, been made, the property of the plaintiff would have
been relieved, under the laws of the state, from any assess-
ment for benefits, made by the eminent domain commission
under supplemental proceedings creating an assessment roll.
As a second breach it is alleged, in effect, that the defendant
wholly failed to carry out its agreement, in that the property
of the plaintiff was not eliminated from the assessment to pay
for removal of earth in accomplishing the regrades, and the
defendant never appropriated anything from its general
fund in cancellation of its assessment on appellant's prop-

erty. It is alleged that these breaches occurred January 20, 1911.

It is then alleged that the plaintiff and its predecessors, relying upon the contract, graded the streets abutting on its lot to the established grade, without expense to the defendant and at a cost to plaintiff of $2,500, and permitted the defendant to take a 12-foot strip from the lot to be used by the defendant for a street, which strip was of a value of $4,000 and for which the plaintiff has received no compensation, and that the plaintiff has been compelled to pay an assessment growing out of the condemnation proceedings amounting to $7,500, which the defendant agreed to pay in consideration of the plaintiff's grading the streets abutting on its lot and permitting the defendant to take the 12-foot strip without compensation. It is alleged that the $2,500 was expended in 1908, that the 12-foot strip was taken in 1909, and the $7,500 was paid in January 1911; that a claim for these expenditures and the value of the strip taken was, on January 20, 1911, filed with the proper officers of the defendant and was rejected. The prayer is for $15,000 damages and for costs.

Whether or not the complaint states a cause of action is obviously dependent upon whether or not the contract pleaded was a valid contract. It is clear that the contract contemplated an exemption of the appellant's property from any assessment, either to pay for the improvement or to pay damages awarded in the condemnation proceeding, notwithstanding the fact that the property and streets involved were included in the improvement district. The exemption from assessment in the condemnation proceedings was to be assured by an agreed verdict of $1 as damages in favor of the appellant in the condemnation suit, thus avoiding any assessment for benefits. The consideration for these exemptions was that the plaintiff grade the abutting streets and surrender the 12-foot strip for street purposes. An almost identical contract based upon the same Ordinance, No. 13,513

(as shown by the record in that case), was involved in, and respondent contends was in effect held invalid in, *In re Third, Fourth and Fifth Avenues*, 49 Wash. 109, 94 Pac. 1075, 95 Pac. 862. That case arose upon appeal from a judgment confirming an assessment roll for widening, by 12 feet on each side, the streets mentioned. It apparently involved the same district as the larger proposed district mentioned in the contract here in question. It was there held that the portion of the condemnation judgment entered by reason of the agreement ordinance was void, because the agreement ordinance itself was void and the court was therefore without jurisdiction to enter the condemnation judgment. The court said:

"The proceeding was based upon a plan not authorized by the law and in direct violation of the statutory requirement that a jury shall determine all the damages after considering also the benefits, thus making it impossible for the city to agree with certain property holders that their property is not benefited in excess of damages, and that it is therefore exempt from assessment."

This language can mean nothing else than that the contract, based upon the void agreement ordinance, was, at least as to the things therein undertaken to be performed by the city, *ultra vires* and void. The appellant contends that the decision in that case merely means that the city council could not usurp the functions of court and jury, and that the assessment payers would not be bound by its attempt to do so, but that this would not invalidate the contract as between the city and the private contracting parties. It is argued that the contract cannot be *ultra vires* as between the appellant and the city, because the city has the right to acquire land for street purposes either by private contract or by condemnation.

It may be admitted that the city might acquire land for street purposes by private contract, but it does not follow that the contract here involved was valid even as between the

parties. The purpose and subject-matter of the contract was not, in contemplation of either of the parties, merely the purchase of land for street purposes. That was only an incident to the main intent. The recitals of its preamble show that the contract contemplated the formation of a larger improvement district of which the district covered by the contract should form a part, but should be exempted from assessment, and that this part of the larger district might be improved in advance of the remainder. This was the dominant if not the sole inducement to the contract on both sides. The real consideration of the contract moving to the appellant was the formation of the larger district, the securing by the city of the other lands necessary to widen streets therein by condemnation, and the exemption of the appellant's property from assessment for that purpose or for any purpose in connection with the improvement. The invalid purposes were so interwoven with the supposed valid purpose of the city to acquire the 12-foot strip from the appellant by private contract as to render the whole contract void and unenforceable.

"An illegal agreement will not be enforced, and hence is not a contract according to the definition of a contract. The illegality may be found in the matter of the consideration or of the promise as expressed in the agreement, or it may be found in the purpose to which the agreement, although legal in expression, is applied. In either case the agreement is void." 9 Cyc. 465.

This was not merely the exercise of a valid power in an invalid way. The dominant purpose of the contract was invalid and beyond the power of the city to accomplish in any way. It was against public policy and in fraud of the rights of other persons in the improvement district. The contract was, therefore, *ultra vires* and void for any purpose. Herein lies the distinction between this case and the decisions of this court chiefly relied upon by the appellant. In *Criswell v. Directors School Dist. No. 24*, 34 Wash. 420, 75 Pac. 984, the board had the unquestioned power to make

the contract for the building of a school house, with all of its provisions. It was contended that the contract was void because of an alleged failure to advertise for bids as required by statute. It was held that the statute was sufficiently complied with and the contract was therefore valid. But it was there stated that, had the contract been *ultra vires*, there could have been no recovery either upon the contract or upon the *quantum meruit*. It was held, however, that, on account of fraud of the contractor, he could only recover the reasonable value of the building.

In *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226, the contract for building a bridge was one which the county commissioners had the power to make, but it was let without calling for competitive bids as required by statute. The contract was therefore held void. It was argued that the contracting parties were liable to a return of the money directed to be paid out by the board and received by the persons building the bridge. The court, following the rule laid down in the *Criswell* case, and in *Chapman v. County of Douglass*, 107 U. S. 348, said:

"While this may be true in some jurisdictions, this court has adopted the more equitable doctrine of allowing the parties, where the contract if entered into in conformity with the statutes would not have been unlawful, to retain from the moneys received by them a sum equivalent to the reasonable value of the property the county acquires and retains in virtue of the execution of the void contract."

In *Chapman v. County of Douglass, supra,* also cited by appellant, the contract was for the purchase of land for a county poor farm. The county had the statutory power to make the purchase, but was limited by statute to a payment in cash or to the levy of an annual tax to create a fund for payment. The county made one payment in cash and gave notes for deferred payments secured by mortgage. The court said:

"The purchase itself, as we have seen, was expressly authorized. The agreement for definite times of payment and

for security alone was not authorized. It was not illegal in the sense of being prohibited as an offence; the power in that form was simply withheld. The policy of the law extends no further than merely to defeat what it does not permit, and imposes upon the parties no penalty."

It was therefore held that the county should either pay for the land within a reasonable time or reconvey it.

The same principle, that there may be a recovery on the *quantum meruit* or a return of the consideration of an illegal contract if the illegality relates not to the substance of the contract but only to the specific mode of performance, runs through nearly all of the cases cited by the appellant where a municipal corporation was concerned. But in the case before us, the illegality related to the very substance of the contract. There was an absolute want of power to make such a contract. It seems to us that the case falls squarely within the rule laid down in *State v. Pullman,* 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836, wherein the distinction which we have noted is clearly recognized. There the contract was held void because absolutely unauthorized except by the assent of three-fifths of the voters of the town, which assent was not procured. This court said:

"It is claimed, however, by the appellant, that, having received the benefits of the contract which the city entered into, it ought to be estopped from denying its validity; also that it had ratified the contract by receiving the benefits. It is well established that the power to ratify is coextensive only with the power to contract, and that an act which was illegal for want of authority on the part of the contracting powers cannot be ratified. There has been a conflict of opinion on some branches of this question, but an investigation of the authorities will show, we think, that where courts have estopped municipalities from interposing the plea of *ultra vires* and from escaping the responsibility of their acts, it has been where there has been a defect in the execution of the contracts, as in the issuance of bonds, etc., and not where there has been an absolute want of power on the part of the municipality to contract. The most of the cases cited by the appellant, as we indicated before, were cases of pri-

vate corporations. The appellant cites *Hitchcock v. Galveston*, 96 U. S. 341, in support of its contention. This is a case which falls within the rule announced above, and the city was proceeding within its powers, but in an irregular manner."

The same distinction is also made in *State ex rel. Spring Water Co. v. Monroe*, 40 Wash. 545, 82 Pac. 888, and is recognized in *Franklin County v. Carstens*, 68 Wash. 176, 122 Pac. 999. Judge Dillon, after stating the reasons and necessity of this rule, says:

"It results from this doctrine that contracts not authorized by the charter or by other legislative act, that is, not within the scope of the powers of the corporation under any circumstances, are void, and in actions thereon the corporation may successfully interpose the plea of *ultra vires*, setting up as a defense its own want of power under its charter or constituent statute to enter into the contract. In favor of *bona fide* holders of negotiable securities, the corporation may be estopped to avail itself of irregularities in the exercise of power conferred; but it may always show that under no circumstances had the corporation *power* to make a contract of the character in question." 2 Dillon, Municipal Corporations (5th ed.), § 791.

The appellant here rested its action solely upon the contract and demanded damages for its breach. The complaint showed upon its face that the contract sued upon was *ultra vires* in the absolute sense that it was beyond the power of the city to enter into in any manner. The demurrer was properly sustained. The appellant refused to amend or ask for any other form of relief. The action was properly dismissed.

Whether, in view of the fact that the contract was void and neither party acquired any rights thereunder, the appellant might maintain an action for the possession of the 12-foot strip, we do not decide. That issue is not presented by the complaint.

The judgment is affirmed.

MOUNT, CROW, and FULLERTON, JJ., concur.