THE CITY OF DECATUR, Appellee, *vs.* E. B. PRYOR, Receiver, Appellant.—THE CITY OF DECATUR, Appellee, *vs.* THE CINCINNATI, HAMILTON AND DAYTON RAILWAY COMPANY *et al.* Appellants.

*Opinion filed February 17, 1915.*

1. SPECIAL ASSESSMENTS—*ordinance construed as requiring city to pave approaches to subway.* Where a track elevation ordinance requires a railroad company to construct a subway at a certain street, build the bridge required and pave with brick the roadway in the subway, all at its own expense, a subsequent provision of the ordinance that the city, at its own expense, shall "build, construct and maintain the approaches to said subway" must be held to include the paving of the roadway of the approaches, particularly where it is apparent that the pavement of the street was in contemplation of the parties when the ordinance was passed by the city and accepted by the company.

2. MUNICIPAL CORPORATIONS—*a track elevation ordinance, when accepted, constitutes a binding contract.* A city has the power, in passing a track elevation ordinance requiring the construction of a subway by the railroad company, to relieve the company from the expense of constructing and maintaining the approaches to the subway, including the paving of the approaches, and such ordinance, when accepted and acted upon by the company, constitutes a binding contract.

APPEALS from the County Court of Macon county; the Hons. O. W. SMITH and FRED C. HILL, Judges, presiding.

CREA & HOUSUM, for appellant E. B. Pryor, receiver.

OUTTEN, EWING, McCULLOUGH & WIERMAN, for appellants the Cincinnati, Hamilton & Dayton Railway Company *et al.*

WILLIAM J. CAREY, Corporation Counsel, (BALDWIN & CAREY, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This was a proceeding in the county court of Macon county to levy a special assessment to pay the cost of paving the roadway of North Jasper street, in the city of Decatur, for its full width of thirty feet, between the curbs of the north line of East Eldorado street and the south line of East Condit street, including the roadways of all intersecting streets and alleys, with the exception of that part occupied by the rights of way of the Wabash Railroad Company and the Cincinnati, Hamilton and Dayton Railway Company. All of the preliminary steps necessary to the levy of a special assessment were properly taken. Objections were filed on behalf of the Cincinnati, Hamilton and Dayton Railway Company, and the receivers thereof, as to the tax against lot 1, block 1, of Cassell's Second addition to the city of Decatur, which was assessed at $580. This lot was assessed also in the name of the Wabash Railroad Company, and objections were therefore filed by the Wabash Railroad Company and its receiver also. This particular lot is known in the record as tract "D." Another small, three-cornered tract of land, one end of which fronts on Jasper street, is known as tract "A." This tract was assessed as part of the Wabash railroad property. The tax upon this particular tract was afterwards stricken off on motion of the city and is not involved here. The Wabash Railroad Company was also assessed for all of block 24 of Carver's addition to the city of Decatur, except a

lot 140 by 65 feet in the north-east corner of said block. Block 24 is referred to in the record as tract "B." A fourth piece of property was assessed to the Wabash Railroad Company as tract "C," which is immediately south of block 24. Tract "C" was assessed $1148.89. Legal objections were filed by the Wabash Railroad Company and the Cincinnati, Hamilton and Dayton Railway Company, by their respective receivers, upon the ground that the city of Decatur, by ordinance No. 158, passed on the 23d day of October, 1913, (which said ordinance is known as the subway ordinance,) had agreed with said railroad companies that the city of Decatur would at its own expense construct and maintain that portion of the roadway in North Jasper street described as the approaches to a subway which was constructed in said Jasper street under the several railroad tracks of the respective companies, where the same intersect the said Jasper street. Other objections as to benefits were also filed, all of which were overruled, and the record is brought to this court by the appeals of the two railroads concerned. The legal objections of both railroads were heard together by agreement and the appeals have been consolidated and will be considered as one case in this court.

In the view we have of this controversy it will only be necessary to consider the legal objections interposed by the appellants.

North Jasper street extends north and south. It is crossed, practically at right angles, by numerous tracks of the two appellant companies. The various tracks of the railroad companies in question occupy a space of something over three hundred feet at the point where they cross Jasper street. As originally constructed all of these tracks crossed Jasper street at grade. The city of Decatur, for the purpose of doing away with the surface crossing and in the interest of the safety of the public, passed a track elevation ordinance, known as ordinance No. 158. Since

the rights of the parties to this controversy primarily depend upon the construction to be given to ordinance No. 158 it will be necessary to set out its principal provisions.

Section 1 of said ordinance orders and directs the two appellant railroad companies to elevate the plane of their respective road-beds and tracks at their intersection with North Jasper street in the manner and upon the conditions specified in the said ordinance. Paragraph 1 of section 1 specifies particularly the manner of constructing the elevated tracks over said street, and, among other things, provides that there shall be twelve feet of clear head-room between the lowest point in the bridge floor and the grade line of North Jasper street as the same is established by ordinance No. 147, which said ordinance is referred to and made a part of said ordinance No. 158. Paragraph 2 of section 1 of said ordinance reserves the right to the city to thereafter require the elevation of the tracks of said railroads at any and all other public crossings within the limits of the city. The open space between the floor of the railroad tracks of the elevated structure and the surface of the roadway under the railroad tracks was obtained partly by the elevation of the railroad tracks and partly by depressing the street level by excavating a subway underneath the proposed elevation upon which the road-beds and tracks were to be placed. Paragraph 1 of section 3 provides that the depression of North Jasper street should be in accordance with the grade lines established by ordinance No. 147, heretofore referred to, and also provides that the width between the walls of said subway, measured at right angles to the center line of North Jasper street, shall be not less than forty feet, the width of the roadway in the subway to be thirty feet and the sidewalks on each side of said roadway to be five feet in width. The top of the finished sidewalks was to be at an elevation of four feet above the established grade of the roadway of the street. The sidewalks were to be constructed of concrete, in ac-

cordance with certain plans and specifications referred to in the ordinance, and were to have hand railings along the edge of the walks nearest the roadway.  The ordinance provides in paragraph 3 of section 3 for the construction of the subway, and refers to certain plans and specifications on file in the office of the mayor of the city and also in the office of the consulting engineer.  Clause "*d*" of section 3 of the ordinance is as follows: "All the necessary excavation shall be made in said North Jasper street as may be required for the depression of said subway and the approaches thereto and in the performance of the other work herein required and permitted by this ordinance, but the depressed portions of the street shall be restored to a good, serviceable and reasonably safe condition for the use of the public as soon as practicable, and all water pipes, conduits, sewers and similar sub-structures belonging to the city or to private corporations that may be disturbed by such excavation or required to be moved or deflected from the position in which they are found shall be replaced, or suitable expedients and arrangements shall be devised and provided to restore them in all respects to their former state of usefulness, but the gradients of the sewer shall not be reduced in any event."  A sewer in that portion of Jasper street which was to be excavated for the subway had to be removed and a new sewer constructed, and this the ordinance provided should be done at the sole expense of said railway companies.  Section 4 provides that said bridge or viaduct and said subway provided for by the ordinance should be constructed and maintained by and at the sole expense of the railway companies under whose tracks or property the same was to be situated.  Section 5 requires the said railway companies to pave with brick the roadway in said subway, and specifies particularly the character of the pavement to be made by said companies in said subway.  Section 6*a* is the section which appellants claim relieves them from any liability to a special assessment for

267 − 15

the paving of the approaches to said subway. That section is as follows: "It shall be the duty of the city of Decatur, at its own expense, to build, construct and maintain the approaches to said subway in accordance with the plans and specifications therefor referred to in paragraph 3 of section 3 of this ordinance." The north and south approaches to the subway comprise a substantial portion of the improvement for which the present special assessment is sought to be made.

Appellants contend that ordinance No. 158, having been accepted by the said railway companies, constituted a valid contract with the city, and that under section 6a the city contracted with appellants that it would "build, construct and maintain the approaches to said subway," and that thereby the appellant companies should be relieved from any special assessment a substantial portion of which was to be expended in paving the approaches to said subway. The parties agree that ordinance No. 158 constitutes a valid and binding contract between the city of Decatur and appellants. The only controversy relates to the construction to be given to section 6a of said ordinance. Appellee concedes that section 6a imposes upon the city the duty to build, construct and maintain the approaches to the subway, but it is said that this obligation is fully discharged when the city has constructed the approaches in such way as to make a continuous roadway under the subway, and that the city did not assume any obligation to improve the approaches by paving the same at its expense.

The object to be attained in construing this ordinance is to arrive at the intention of the contracting parties. It is specifically provided in the ordinance that that portion of Jasper street which is described as the subway proper is to be paved with vitrified brick, in accordance with particular specifications set out in the ordinance. It can hardly be presumed that it was in the contemplation of the parties that all of the expense of elevating the tracks and con-

structing a subway was to be incurred and the approaches to said subway left as dirt streets. Manifestly, it was contemplated at the time this ordinance was passed that North Jasper street would ultimately be a finished, paved street. Assuming, as we must, that this was contemplated, it is reasonably apparent that at the time section 6a was enacted it was intended that the words therein used imposed upon the city the duty of doing whatever was intended should be done in respect to the approaches to the subway. If, at the time the words "build, construct and maintain the approaches to said subway" were used, the thing to be built, constructed and maintained was a finished, paved street, then the words of the ordinance should be construed as imposing the duty to build, construct and maintain the approaches in the finished condition contemplated by the parties at the time the ordinance was passed. We come more readily to this conclusion by a consideration of certain other provisions of ordinance No. 158. The next clause following section 6a, which is clause "b" of such section, obligates the city, at its own expense, to cause the Jasper street sewer as now located in the approaches to the proposed subway to be deflected within the line of the approaches so as to properly and securely connect the same with the proposed deflection of said sewer in the subway, to which is added a proviso to the effect that the obligation of the city in respect to the sewer in the approaches should not be so construed as to prevent the said city from building and constructing sewers, by special assessment or special taxation, as may be necessary and desirable in the future, and to "assess a proportionate share of the cost thereof against the property of the railway companies herein, according to benefits, as is now or may be provided by law." Here we have the city assuming a burden in respect to the sewer in the approaches,—that is to say, the city agreed to construct the sewer in the approaches so as to connect the same up with the new sewer built by the railway com-

panies in the subway; but the city was careful to reserve the right to itself to construct such other sewers as might be necessary and to charge a proportionate part of the cost thereof to the railway companies by levying a special assessment upon their respective properties. If it had been the intention of the city to reserve the right to pave the approaches to the subway and charge the proportionate part of the cost to the railway companies such intention could have been made clear and unequivocal by adding a proviso such as is found in connection with the provision in regard to additional sewers in said approaches. The presence of such proviso in regard to the sewer and its absence in connection with the construction, building and maintenance of the roadway lends force to the conclusion that the city intended to relieve the railway companies from any portion of the burden of paving said approaches. The cost of paving the approaches to the subway is doubtless much more than the installment of any sewers that may become necessary, and this fact adds strength to the view that if the city had intended to reserve a right to levy special assessments upon the railroad property to pay for such paving it would have used clear and unequivocal language expressing that intention, such as was used in regard to the sewer. But disregarding all sidelights that may be found in other parts of the ordinance and taking the language of section 6a alone, it was clearly the intention that the city should build and maintain the approaches to the subway at its own expense,—at least without any expense to the railway companies with whom, alone, it was making this contract. The words "build, construct and maintain" are broad enough to require the doing of all things necessary to the completed approaches. There is no more reason for the contention that the city could grade the subway and then abandon it, than there is for holding that the city could stop at any other stage of the work between the commencement and the final completion of the approaches. The city had the

power to enter into this contract with the railway companies, and the same is a binding obligation upon each. (*McChesney* v. *City of Chicago*, 213 Ill. 592; *City of Lincoln* v. *Harts*, 250 id. 273.) In *City of Anna* v. *Northern*, 261 Ill. 538, this court held that language in an ordinance requiring a street railway to "keep the space between said rails and one foot on each side of the outer sides thereof in good and safe condition and repair with the same material used on the remainder of the streets by the city, or other good material that may be approved by the city council of said city," imposed the duty on the street railway company to pave the described portions of the street in the same manner and with the same material that the city council had ordered used on the balance of the roadway. In that case it was earnestly contended that the obligation of the street railway company was limited to maintaining the roadway between its tracks after the same had been constructed by the city. That contention was not sustained, and it was held that the language employed by the contracting parties, properly construed, placed the burden of constructing the pavement upon the street railway. The language of section 6a in the instant case is quite as clear, if not more so, than the language in the ordinance under consideration in the case above referred to.

Our conclusion is that the court erred in overruling the objections of the appellants and in holding that the railroad properties were liable for any portion of the cost of paving the approaches to the subway. The conclusion we have reached upon this question makes it unnecessary to pass on various other alleged errors in the rulings on the hearing of the question of benefits.

The judgment of the county court of Macon county is reversed and the cause remanded.

*Reversed and remanded.*