CLARENCE E. SPOERL, JR., *ET AL.*, PLAINTIFFS-APPEL-
LANTS, v. TOWNSHIP OF PENNSAUKEN, *ET AL.*, DE-
FENDANTS-RESPONDENTS.

Argued November 16, 1953—Decided January 11, 1954.

*Mr. Neil F. Deighan, Jr.*, argued the cause for appellants (*Messrs. Evoy, Feinberg and Deighan*, attorneys).

*Mr. Thomas F. Salter* argued the cause for respondents.

The opinion of the court was delivered by

WACHENFELD, J. The inquiry here is whether a covenant in a deed for real estate, given by a municipality, releasing the property from further assessment for benefits, is legal or *ultra vires*. The question is centered in an action brought by owners of premises in the Township of Pennsauken, wherein they seek an order restraining the township officials from collecting the subject assessment and its cancellation as to them; they ask also damages for the amount already paid and for the additional sums due in the event it be determined the other relief sought cannot be granted.

The allegations of the complaint set forth the plaintiffs are owners of premises formerly held by the defendant township; that the lands, along with other property, were conveyed by the township to Capital Development Corporation in 1941, and by Capital to plaintiffs' predecessors in title in 1943, and thence to plaintiffs in 1945. The deeds from the defendant township to Capital contained the following covenants and agreements running with the land:

"Subject to all existing restrictions of record, easements and right if any of public utilities. The above described lands and premises shall not be subject to assessment for the cost of any municipal sewerage facilities which shall be erected or constructed for the purpose of permitting the use of any sewer lines or mains now laid in the streets upon which the above described lands and premises abut. However, the above described lands and premises shall be subject to assessment for municipal improvements and municipal services where the facilities for said services and said improvements are not presently installed in said streets or in or upon the lands and premises above described. The above described lands and premises together with any improvement or improvements to be erected thereon, shall be free and clear of taxes to and including December 31, 1941, but shall be subject to the payment of taxes thereafter."

The complaint reveals, further, that over 27 years ago the township embarked upon the construction of sanitary sewers; however, they were not connected to the township sewerage system and were not put into operation until 1950. During that same year the township undertook to put in certain new sanitary connecting sewer lines, sanitary trunk sewer lines and two new sewage pumping stations. The pumping stations, in addition to being used in conjunction with the new sanitary connecting lines, were also to make usable the sanitary sewers installed as part of the earlier project.

The substantial cost of all this necessary work was in 1950 assessed against the benefited property owners, including the plaintiffs. Thereupon they challenged the legality of the assessments, joining with 129 other plaintiffs in filing a complaint in lieu of prerogative writ against the township. The attack was not timely. This court, in upholding their validity, declared the assessments could properly be challenged under *R. S.* 40:56–54, within the time limited therein, and not by way of an action in lieu of *certiorari,* where the charge of illegality was founded, *inter alia,* in covenants in deeds. *Holloway ·v. Township of Pennsauken,* 12 *N. J.* 371 (1953).

Having failed in the earlier suit, the plaintiffs instituted this action based on the theory that the levy and assessment for the sewer improvements by the defendants are a breach of the covenants and warranties referred to, and they demand judgment in the form set forth above.

The Chancery Division granted summary judgment in favor of the defendants on the grounds that the matters and things complained of are *res adjudicata*; that the plaintiffs failed to take an appeal from the assessment within the time and manner provided by law; that the plaintiffs failed to seek a review of the assessment by a proceeding in lieu of prerogative writ or otherwise within the time provided by law; that the plaintiffs are guilty of laches; that the covenants are *ultra vires* the township and void; and that plaintiffs, having failed to include an application for injunc-

tive relief and damages in the *Holloway* suit, are barred from seeking that relief here; and the complaint fails to state a claim upon which relief can be granted and there is no genuine issue as to any material fact.

The present cause was certified here on the court's own motion. *R. R.* 1:10–1.

All of the bases of the lower court's decision have been briefed and argued before us. Inasmuch as our conclusion turns upon the substantive defense of *ultra vires,* a consideration of the others presented is rendered unnecessary.

That the defense is available to a municipal corporation is no longer open to question. In *Hill Dredging Co. v. Ventnor City,* 77 *N. J. Eq.* 467 (*Ch.* 1910), the court pointed out a municipal corporation cannot be bound by an engagement which it had no power to make and its corporate powers cannot be extended by the operation of the doctrine of estoppel. The court said:

"It follows that the defense of *ultra vires* is available to a municipal corporation. These principles appear to be well established. They arise from the public necessity of limiting the powers of the officers of such corporations to such engagements as are within the scope of the powers conferred upon the municipality by the Legislature."

See also *New Jersey & N. E. Telegraph Co. v. Fire Comm'r.,* 34 *N. J. Eq.* 117 (*Ch.* 1881), affirmed 34 *N. J. Eq.* 580 (*E. & A.* 1881) ; *Hoboken Local No. 2, New Jersey State Patrolmen's Benev. Ass'n v. City of Hoboken,* 23 *N. J. Misc.* 334 (*Sup. Ct.* 1945) ; and cases cited therein; 10 *McQuillin, Municipal Corporations* (3d ed.), sec. 29.02.

Our attention is not called to, nor does our research uncover, any statutory provision granting a municipality the authority and power to give a covenant relieving property of the burden ordinarily imposed by receipt of benefits, but arrangements giving up the city's right to collect assessments for benefits have been entered into under appropriate contracts and have been sustained under certain circumstances. In every instance, however, emphasis has been

placed upon the necessity of determining whether there was adequate consideration for the right relinquished by the municipality. See *Dempster v. Chicago*, 175 *Ill.* 278, 51 *N. E.* 710 (*Sup. Ct.* 1898); *Coit v. City of Grand Rapids*, 115 *Mich.* 493, 73 *N. W.* 811 (*Sup. Ct.* 1898); *State ex rel. City of Minneapolis v. Dist. Ct. of 4th Judicial Circuit*, 83 *Minn.* 170, 86 *N. W.* 15 (*Sup. Ct.* 1901); *Washington Water Power Co. v. City of Spokane*, 89 *Wash.* 149, 154 *P.* 329 (*Sup. Ct.* 1916); *City of Atlanta v. Akers*, 45 *Ga.* 680, 89 *S. E.* 764 (*Sup. Ct.* 1916); *Richardson v. City of Seattle*, 97 *Wash.* 371, 166 *P.* 639, 168 *P.* 513 (*Sup. Ct.* 1917); *In re Patterson*, 98 *Wash.* 334, 167 *P.* 924 (*Sup. Ct.* 1917); *In re Minnehaha Parkway*, 167 *Minn.* 258, 209 *N. W.* 939 (*Sup. Ct.* 1926).

The theory of these cases is exemplified by the following from the last cited case:

"* * * this was not an 'exemption' in the sense in which that term is usually understood, but a substituted method of paying the purchase price of land acquired by the city * * *. It operates as a payment in advance of the specified sum upon the specified assessments."

A similar case in our own jurisdiction is *Central R. Co. of New Jersey v. Mayor & Aldermen of Jersey City*, 92 *N. J. Eq.* 100 (*Ch.* 1920), relied on by the appellants. There the plaintiff brought an action for specific performance to compel the defendant municipality to extend its sewer lines. The plaintiff and the city had entered into an agreement whereby the city acquired an easement for sewer purposes, in return for which it agreed to run sewer lines through the lands received, to the benefit of the plaintiff. In granting specific performance, the court pointed out that the city had received property of value between $75,000 and $100,000. The court could conclude only that "the city's failure to carry out its part of the contract is, to my mind, on the case as presented, unjustifiable."

Obviously the vital element of consideration dictated the result. The case is similar to *Coit v. City of Grand Rapids*,

*supra,* where a release from an assessment was appropriate consideration for the land conveyed or for the damage by emptying the filth of the city into the river at the center of the plaintiff's lands. There was a contribution of land in return for plaintiff's suffering damages. It might be noted in passing that even under those circumstances a sharp dissent was filed on the specific ground that an exemption of the plaintiff's land would increase the assessment of benefits against others.

Despite the persuasive authority cited above, there is a wealth of contrary opinion, holding *ultra vires* the abatement of assessment notwithstanding the presence of adequate consideration. See *Neal v. Town of Decatur,* 142 *Ga.* 205, 82 *S. E.* 546 (*Sup. Ct.* 1914). In Delaware, for instance, a municipal corporation is "without authority to bargain away its right to assess for improvement benefits locally." *Bancroft v. Mayor & Council of City of Wilmington,* 14 *Del. Ch.* 185, 123 *A.* 602 (1924). Cases from other jurisdictions are collected in 14 *McQuillin, op. cit., sec.* 38.86, with a comment to the effect that, in the absence of an express grant of power, a municipal corporation is without authority to make contracts for the exemption or commutation of local assessments. For what are there termed "obvious reasons of right and justice," courts have declared such agreements to be *ultra vires.*

Our attention is directed also to a line of cases involving dedication of lands to a municipality, in return for which the property owner exacts an agreement that improvements which benefit his remaining property will not be charged against him. Again the relinquishment is based upon a proper *quid pro quo,* the city giving something of value in return for which it receives something of at last equal value. *Perth Amboy Trust Co. v. Board of Aldermen of the City of Perth Amboy,* 75 *N. J. L.* 291 (*Sup. Ct.* 1907); *City of Omaha v. Megeath,* 46 *Neb.* 502, 64 *N. W.* 1091 (*Sup. Ct.* 1895); *Browne v. Palmer,* 66 *Neb.* 287, 92 *N. W.* 315 (*Sup. Ct.* 1902); *Giles v. City of Olympia,* 115 *Wash.* 428, 197 *P.* 631, 160 *A. L. R.* 493 (*Sup. Ct.* 1921).

Again there is a notable lack of unanimity, a number of jurisdictions adhering to the view that public policy does not permit the granting of immunity from public burdens, even within the relatively confined field of dedication of lands. See annotation in 16 *A. L. R.* 499.

One other group of cases remains to be commented upon. Frequently an adjudication upholding the release of an assessment turns upon the interpretation of a particular statute, ordinance or charter, but because of the expressed legislative authority, those declarations are not to be confused with the enunciated general doctrines. *Westminster Heights Co. v. Delany,* 107 *App. Div.* 577, 95 *N. Y. S.* 247 (*App. Div.* 1905), affirmed 185 *N. Y.* 539, 77 *N. E.* 1198 (*Ct. App.* 1906); *In re Lawrence St. of New York City,* 136 *N. Y. S.* 845 (*Sup. Ct.* 1912); *In re Hebberd Ave. in City of New York,* 150 *N. Y. S.* 462 (*Sup. Ct.* 1914); *City of Decatur v. Pryor,* 267 *Ill.* 221, 108 *N. E.* 61 (*Sup. Ct.* 1915); *Kirchner v. City of Pittsfield,* 312 *Mass.* 342, 44 *N. E. 2d* 634 (*Sup. Jud. Ct.* 1942). But *cf. J. S. H. Co. v. City of Atlanta,* 193 *Ga.* 1, 17 *S. E. 2d* 55 (*Sup. Ct.* 1941).

The appellants place some reliance on *R. S.* 40:60–26(*c*), *N. J. S. A.,* but we are unable to discern therein any clause sustaining their position on the question of abatement of assessments. Obviously, it was under the predecessor of this statute, *L.* 1939, *c.* 344, *p.* 846, that Capital Development Corporation purchased the municipally-owned lands. The act governed the circumstances in which a municipality might accept the offer for the purchase of municipal properties, including the publishing of the "terms and conditions" of the sale and its confirmation and ratification under those terms and conditions. It also empowered the governing body to impose conditions and restrictions on the use to be made of the land. However, the unique power here involved and sought to be invoked is nowhere noted or commented upon.

The court below concluded that " 'terms and conditions' did not cover the sale of city lands into an organization like the Capital Development Corporation with the waiver of

assessment that might be made," and with that determination we are in agreement.

It is significant that the Legislatures of other states have in some instances expressed themselves on the general problem of a municipality's power to relinquish assessments for benefits, but where they have not done so, courts have either approved such abatement on the basis of adequate consideration or have taken the stand that such relinquishment was against public policy. See 10 *McQuillin, op. cit., sec.* 29.06.

Our own courts have adopted the view that an agreement to relieve property from taxation is contrary to basic notions of equity:

"The reason that municipal corporations cannot without express authority exempt property from taxation is that the effect of such exemption is to increase the burden upon those who are not so favored. The same effect follows where the municipality gives up any source of revenue, and the same reasoning is applicable." *Jersey City v. North Jersey Street R. Co.,* 78 *N. J. L.* 72 (*Sup. Ct.* 1909).

The reasoning employed in the taxation equations is equally applicable to the general problem of abatement of assessments.

With the principles enunciated in mind, and with an awareness of the obvious conflict of judicial authority on the entire problem confronting us, we turn our scrutiny to the factual status in the record before us. It shows that Capital Development Corporation paid $2 per front foot for the lands in question. The assessment for the 1925 work amounted to about $2.27 per front foot, and for the 1949 project came to approximately $4.83 per front foot. The total assessment was thus about $7.10 per front foot, while the purchase price was less than one-third that amount. Did the municipality, under these circumstances, receive a "valuable" or "adequate" consideration for the property it conveyed and the forgiveness of the pending assessments?

The trial court decided:

"There is nothing before me to show that all of these lands, in having proper sewerage facilities provided for them, might not more than have eaten up the purchase price * * *

"I think there was a giving away of public moneys and that the action was *ultra vires.*"

We are in accord with the conclusion so reached.

In *Jamouneau v. Local Government Board*, 6 N. J. 281 (1951), we said:

"The city may not give away revenues not yet approved any more than it may give away revenues now due. *Jersey City v. North Jersey Street R. Co.*, 78 N. J. L. 72 (*Sup. Ct.* 1909). When we say 'give away'' we refer to the legal conception of a clear and substantial deficiency in consideration for giving up a source of city revenue even though the deficiency may not have been perceived by the city when the authorizing resolution was adopted and became demonstrated only on the review."

, Here we likewise think there was a "substantial deficiency in consideration" for relinquishing the right to assess the property for benefits received even though that deficiency may not have been perceived until the completion of the sewer facilities.

Municipalities have often been termed creatures of the Legislature, endowed only with the powers granted by legislative mandate. They are proscribed by constitutional provision from giving away any "money or property" and their transactions are covetously guarded by the law in an endeavor to make certain they do not inure to the benefit of a few at the expense of the many.

The courts have frequently expressed apprehension of the result following from the exemption of particular property, which always increases the assessment of benefits against others. See *Towne v. City Council of City of Newton*, 169 *Mass.* 240, 47 N. E. 1029 (*Sup. Jud. Ct.* 1897); *H. S. Turner Inv. Co. v. City of Seattle*, 70 *Wash.* 201, 126 P. 426, 41 L. R. A., N. S., 781 (*Sup. Ct.* 1912); *Town of North Liberty v. David*, 102 Ind. App. 490, 199 N. E. 451 (1936).

Our own courts are in sympathy with the view there expressed, as is indicated by the following from *Whipple v. Teaneck Township*, 135 N. J. L. 345 (*E. & A.* 1946), in which the Court of Errors and Appeals dealt with a related problem:

"In ordinary tax exemption, no levy of the tax is made against the property, but the amount of municipal tax lost falls upon the remaining taxpayers of the municipality, the amount of county tax lost is spread over all the taxpayers of the county and the amount of state tax lost, over all the taxpayers of the state, so that the impact on the remaining taxpayers of the municipality is always less than the total amount of tax levied. Under this extraordinary form of tax exemption by which the taxes are levied and the municipality pays them, the remaining taxpayers of the municipality must raise the total amount of tax lost—a greater burden than imposed when the tax exemption is in common form. Substance rather than form is the controlling factor and this agreement is *ultra vires* because its effect is to grant tax exemption."

Under the circumstances here encountered and for the reasons expressed, we think the relinquishment contained in the covenants is *ultra vires,* and the judgment below is accordingly affirmed.

*For affirmance*—Justices OLIPHANT, WACHENFELD, BUR-LING, JACOBS and BRENNAN—5.

*For reversal*—Justice HEHER—1.