MAYOR AND ALDERMEN OF JERSEY CITY v. NORTH JERSEY STREET RAILWAY COMPANY.

Argued February Term, 1909—Decided July 16, 1909.

1. A municipal corporation cannot, without express legislative authority, release a private corporation from an obligation to pay license fees to the municipality.
2. The failure for many years of a municipal corporation to collect license fees due from a private corporation does not warrant a presumption of a release when the municipal corporation is without express legislative authority to make a release.
3. A traction company organized under the act of 1893 which has succeeded to the rights of a street railway company after the charter of the latter has expired, is nevertheless liable for the payment of license fees due the municipality from the street railway company.
4. Where a street railway company continues after the expiration of its charter to exercise the same rights in the public streets that it had previously exercised, it remains liable to pay license fees under a previous contract with the municipality.

Before Justice SWAYZE.

For the plaintiff, *James J. Murphy* and *Harry Lane.*

For the defendant, *Frank Bergen, William D. Edwards* and *Sherrerd Depue.*

The opinion of the court was delivered by

SWAYZE, J. This is the same case that has previously been before the court on demurrer. 41 *Vroom* 360; 42 *Id.* 367; 43 *Id.* 383. The pleas not already disposed of are two—(1) *nil debet;* (2) release. The issues joined on these pleas were originally tried before Justice Fort and have been argued before me on the evidence then taken.

The plea of release is thought to be sustained by proof that no license fees have been exacted or collected by the city since 1867, and the failure to rebut any presumption arising therefrom. The defendant relies on the language of Mr. Justice Dixon in 41 *Vroom (at pp.* 363, 364). Justice Dixon undoubtedly there suggested that a release might be presumed if there were no circumstances to rebut the presumption, but he was then dealing only with the question of pleading. What he actually decided was that a release would not be presumed on demurrer merely because the declaration showed that no license fees had been paid since 1868; a release, he held, must be specially pleaded. He was not called upon to consider what proof would be required to establish a release. In a proper case a release may be presumed from lapse of time. Such a case was Given *v.* Wright. But in order that a release may be presumed it is essential that the party who is presumed to have executed the release should have authority to do so. When that party is an individual, as in the cases cited, no difficulty arises. An individual of full age may execute a release as well as make a contract. But when the party is a municipal corporation, as in the present case, the authority to execute a release must appear before the execution can be presumed. Justice Pitney hinted at this difficulty in the opinion reported in 43 *Vroom* (at *p.* 392). To my mind it is insuper-

able.  The plea fails to aver any consideration for the release, and since a valid release may be executed without any consideration, it is not necessary to assume that there was any.  A release may well be voluntary.  The exact question then may be thus stated: It is competent for a municipality without express legislative authority to give away to a private corporation a portion of the city's revenues, not merely revenues then due, but revenues to accrue in the future for years thereafter.  To state this question is to answer it.  The doubt has never been whether such an act required express legislative authority, but whether it was even within the power of the legislature to authorize such a donation.  Since the decision in *Loan Association* v. *Topeka,* 20 *Wall.* 655, it has been thought beyond the power of the legislature itself to authorize municipal aid to private corporations, and certainly such aid has been impossible since the amendments to our constitution in 1875, article 1, sections 19, 20.  I cannot distinguish in principle between direct pecuniary aid and aid by means of a release from a pecuniary burden.  I am equally unable to distinguish between a release of the city's claim to revenue from license fees, and its claim to revenue from taxation.  A municipality cannot exempt persons or property from taxation without legislative authority.  *Cooley Tax.* (*2d ed.*) 200, 201; 12 *Am. & Eng. Encycl. L.* (*2d ed.*) 283, *note* 2.  That is the necessary result of the principle that a municipal corporation can levy no taxes unless the power be plainly and unmistakably conferred (*Dill.,* § 763), and the statutory mode must be pursued.  *Id.,* § 769. So strictly have our courts construed this power of exemption that we have held that the statutory authority to a municipality to issue bonds exempt from taxation was abrogated by our constitutional amendment of 1875. *Merchants' Insurance Co.* v. *Newark,* 25 *Vroom* 138 (at *pp.* 141, 142).  The reason that municipal corporations cannot without express authority exempt property from taxation is that the effect of such exemption is to increase the burden upon those who are not so favored.  The same effect follows where the municipality gives up any source of revenue and the same reasoning is applicable.  I am not pointed to any

statutory authority which permitted Jersey City to release the defendant from the payment of these license fees, and in the absence of such power a release is not to be presumed.

A somewhat similar case relating to taxes is *Wells* v. *Savannah,* 181 *U S.* 531, where the city leased certain lots on ground rents, and did not tax them for nearly a century. The court said: "We are unable to see that any contract of exemption has been proved. The payment of taxes on account of property otherwise liable to taxation can only be avoided by clear proof of a valid contract of exemption from such payment and the validity of such contract presupposes a good consideration therefor. If the property be in its nature taxable the contract exempting it from taxation must, as we have said, be clearly proved. It will not be inferred from facts which do not lead irresistibly and necessarily to the existence of the contract. The different annual ordinances for taxation passed by the common council, exempting from taxation thereunder the leased lots, were but exemptions for the year in which the ordinance was passed, and there can be no plausible claim urged that they, one or all, constituted any contract for exemption beyond the time of each specific ordinance."

The same reasoning is applicable here. The failure to exact the license fees does not lead irresistibly to the conclusion that there was a release; the more natural inference is that the financial officers failed to assert the city's claim, but such failure would not bar the claim until the statute of limitations had run, and here there was no express exemption or release as in Wells *v.* Savannah. That case was subsequently approved in *Savannah, &c., Railway Co.* v. *Savannah,* 198 *U. S.* 392, and in *Metropolitan Street Railway Co.* v. *New York,* 199 *Id.* 1. One of the headnotes in the latter case is: "The omission of the legislature for one year, or for a series of years, to tax certain classes of property, otherwise taxable, does not destroy the power of the state to subject them to taxation when it sees fit to do so." The decision goes upon the ground that the taxing power is of vital importance, but the same arguments which prevented the courts from presum-

ing an exemption from taxation prevent me from presuming a release of one source of the public revenue. I therefore decline to find as requested in requests No. 1 and No. 2.

It is further urged by the defendant that it is no longer operating under the franchises of the Jersey City and Bergen railway which were assumed by the Court of Errors and Appeals to have expired with the charter of that company in 1884. *Jersey City* v. *North Jersey Street Railway Co., 45 Vroom* 774. The argument is that it is settled by the case cited that the source of the defendant's franchise is the act of 1893, known as the Traction act, and hence there can be no liability to pay the license fees which were to be paid in consideration of the expired franchise of the Jersey City and Bergen railroad. The argument overlooks the fact that something more was necessary to give the defendant its present franchise than the mere enactment of the act of 1893. That act itself required the Consolidated Traction Company as a condition precedent to secure the consent of the owners of the then existing street railway. This consent was as necessary as the certificate of incorporation itself, and it was granted, as it necessarily must have been, upon the terms set forth in section 16 of the act. Among those terms was the provision that all debts, liabilities and duties of the lessor company should attach to the lessee, and be enforced against and enjoyed by the latter to the same extent and in the same manner as they were enforceable against or enjoyed by the lessor. At the date of that lease the Jersey City and Bergen Company was enjoying the same franchise that it had exercised prior to the expiration of its original charter. As the Court of Errors and Appeals said in 45 *Vroom* (at *p.* 780), the city authorities treated the railway as a street railway legally existing with the city's consent. Since the liability of the Jersey City and Bergen Company to pay these license fees was a matter of contract and was a payment for the right to run its cars, I think it is an irresistible inference that by continuing to exercise the franchise and to run its cars the company impliedly promised to pay the fees. That obligation was an existing liability at the time of the lease, which under the provisions

of section 16 became a liability of the lessee. Consequently I find for the plaintiff and against the defendant that the defendant owes the plaintiff.

The amount is to be ascertained. The plaintiff claims $10 for each car for each section of track authorized by a separate ordinance. This I think erroneous. The true meaning is that $10 shall be paid for each car regardless of the route over which it runs. The argument of the defendant seems to me unanswerable, that otherwise the defendant could lessen the amount of the payment by running fewer cars over each section, and yet make as many trips since the several sections would be shorter. Obviously this would be to the public detriment, and a construction ought not to be adopted which would hold out so great a pecuniary inducement to poorer service. It certainly could not have been the intention to treat each separate section of track as a separate railway.

The amount of the debt upon the principles I have adopted is a mere matter of calculation. If counsel cannot agree, I will settle it upon notice. The plaintiff is entitled to judgment for the amount when ascertained. I will afford counsel an opportunity to have exceptions taken and sealed to my rulings.