287 N.J. Super. 163 (1994)
670 A.2d 600
DORCHESTER MANOR, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
BOROUGH OF NEW MILFORD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division, Bergen County.
Decided November 18, 1994.
*166 Gary D. Gordon, for plaintiff (Feinstein, Raiss & Kelin, attorneys).
Sheri K. Siegelbaum, of counsel, for defendant (Scarinci & Hollenbeck, attorneys).
KOLE, J.A.D., Retired and Temporarily Assigned on Recall.
Dorchester Manor (Dorchester or plaintiff), instituted this suit against the Borough of New Milford (the Borough or defendant), alleging that defendant is guilty of breach of contract. Plaintiff's cause of action arises from a developer's agreement (the Agreement) entered into on or about June 12, 1967, relating to the *167 construction and operation of a two hundred unit apartment complex in the Borough.
The comprehensive Agreement covered a number of matters that plaintiff, as developer, was required to perform "in accordance with the ordinances of the Borough" as a condition of the Borough's approval of plaintiff's site plan. Among other things, plaintiff was to construct the apartments, provide necessary drainage, improve all streets shown on the site plan, and dedicate all of such streets for public use by deed to the Borough. There is no evidence as to whether such dedication of the streets ever occurred.
Section 6 of the agreement states:
The Developer further agrees that in perpetuity it will provide garbage disposal facilities for all of the apartments shown on the Site Plan to be approved by the Board of Health and the Mayor and Council of the Borough of New Milford. The Borough of New Milford will provide garbage removal service two days a week in accordance with the present Borough ordinances and regulations, but it shall be the obligation of the Developer to provide adequate facilities for the remaining four days of the week.
Plaintiff maintains that the purpose of this section was to ensure that plaintiff received the same municipal garbage collection services as all other residential property owners in the Borough, including both single family residences and apartment complexes.
Despite the agreement, defendant has never provided garbage collection services to plaintiff. However, on or about November 20, 1990, plaintiff  motivated, in part, by large increases in tipping fees and other costs resulting in escalating collection expenses  demanded, for the first time, reimbursement in lieu of defendant's obligation to provide collection services in accordance with section 6 of the Agreement. This demand was made even though prior to 1990, plaintiff never requested defendant either to collect garbage or pay for such services in accordance with section 6. Instead, as hereafter indicated, plaintiff accepted payments from the Borough annually based on a unit price having no relationship to plaintiff's costs of garbage collection or the two days per week formula set forth in the Agreement.
*168 In an effort to resolve the matter, defendant offered to collect garbage generated at Dorchester provided that such garbage be stored in curbside dumpsters in accordance with Chapter XVI, Section 16-1.5i, of the current Borough ordinance, adopted in 1991. Plaintiff, however, refused to place its garbage curbside.
Defendant also offered, as an alternative, to pay plaintiff the cost of one-third of its collection services. Plaintiff refused this offer, claiming it was entitled, under the Agreement, to two-thirds of its garbage collection costs since 1986. Plaintiff collected its garbage three times per week. On this thesis, plaintiff showed that since January 1, 1986, it has paid $270,693.18 for garbage removal and tipping and other costs and $750 for 1991 recycling expenses. Consequently, plaintiff seeks a judgment in the amount of $223,012.90 to cover one hundred percent of tipping fees, two-thirds of garbage collection and trucking fees, related taxes and surcharges, and unreimbursed recycling costs.
Although a municipality may, in its discretion, provide garbage collection and disposal services, it has long been recognized that "it is the duty, primarily, of a person on whose premises are garbage and refuse material, to see to it, by proper diligence, that no nuisance arises therefrom which endangers the public health.... He may [be] required, at his own expense, to make, from time to time, such disposition of obnoxious substances originating on premises occupied by him as [is] necessary in order to guard the public health." Pleasure Bay Apts. v. City of Long Branch, 66 N.J. 79, 84, 328 A.2d 593 (1974).
The New Jersey courts have long recognized that the collection and control of garbage are indispensable to the public health and safety. Pleasure Bay, supra, 66 N.J. at 85, 328 A.2d 593. As a result, municipalities may enact or adopt necessary and reasonable ordinances or other regulations governing the collection, removal and disposal of garbage and other refuse to the extent they have been granted that power by the Legislature. Pleasure Bay, supra, 66 N.J. at 85, 328 A.2d 593; 7 McQuillin Municipal Corporations section 24.252 (3rd ed. 1968).
*169 Although the defendant had the power to contract with plaintiff for the collection and disposal of garbage, defendant asserts that section 6 created an obligation for the Borough in perpetuity and so is void as against public policy. The court need not go so far. That a municipality's contract is by its terms perpetual does not necessarily make it void as against public policy, provided it is made pursuant to express statutory authority delegated to municipalities and the statute may be properly construed as containing no limitation with respect to length of time for which an agreement may be made. Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 31, 138 A.2d 402 (1958); 10A McQuillin Municipal Corporations section 29.102 (3rd ed. 1968). In West Caldwell, supra, the Court stated that a municipality cannot bind itself by a perpetual contract or a contract of unreasonable duration, unless by legislative sanction; and that this is true particularly where the subject matter of the contract involves the exercise of police power in the vital area of health and sanitation. There is no express statutory authority here for the Borough to collect garbage or reimburse for the collection thereof in perpetuity.
The provision of section 6 of the Agreement that Dorchester was required "in perpetuity" to provide garbage disposal facilities for the apartments would appear to be unassailable, since the imposition of such a perpetual duty to collect and dispose of garbage and other waste is required by law for public health reasons. Pleasure Bay, supra, 66 N.J. at 84, 328 A.2d 593. This duty extends to at least the six days per week contemplated by the Agreement. The Agreement's requirement that the developer provide adequate facilities for the remaining four days of the week (beyond the two days provided by the Borough) is merely a reiteration of the settled legal responsibility of the apartment complex owners with respect to garbage disposal and collection.
However, the provision of section 6 stating that the Borough will provide "garbage services two days per week in accordance with the present Borough ordinances and regulations" *170 cannot legally bind the Borough perpetually. (Emphasis supplied.) To the extent it may be so construed, it is ultra vires and void. West Caldwell, supra.
Since perpetual contractual performance is not favored in the law, in order to uphold the validity of similar agreements, courts have held that a contract without a time limit may be construed as binding for a reasonable time. West Caldwell, supra, 26 N.J. at 28-30, 138 A.2d 402. "What constitutes a `reasonable time' is usually an implication of fact, and not of law, derivable from the language used by the parties considered in the context of the subject matter and the attendant circumstances, in aid of the apparent intention." Ibid. In the present case, defendant's obligation at best is a duty imposed for a reasonable period of time after June 12, 1967 (the date of the Agreement), or until there is a significant change in the applicable Borough ordinances or reasonable practices by the Borough relating to garbage collection, or there is a subsequent expression by the Legislature, by way of statute, as to policy or municipal authority in this area. Pleasure Bay, supra, 66 N.J. at 85-91, 328 A.2d 593.
It is clear from the evidence that the purpose of the provisions in the Agreement as to two days of collection by the Borough was the Borough's recognition, through its attorney, that it was legally required to treat garden apartments the same as other residential dwellings with respect to garbage collection. This view of the law was subsequently adopted by the courts. Boulevard Apts., Inc. v. Mayor of Lodi, 110 N.J. Super. 406, 265 A.2d 838 (App.Div. 1970). As of the date of the Agreement, defendant was collecting garbage from residential dwellings two days per week. But curbside collection was later deemed sufficient for garden apartment complexes. Pleasure Bay, supra; Property Owners v. Mayor of Parsippany-Troy Hills, 264 N.J. Super. 538, 624 A.2d 1381 (App. Div. 1993).
Defendant, however, asserts that section 6 of the Agreement was abandoned by the parties and, as a result, is unenforceable. As a general rule, a contract will be treated as abandoned *171 where one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces in that behavior. Mossberg v. Standard Oil Co. of N.J., 98 N.J. Super. 393, 406-07, 237 A.2d 508, (Law Div. 1967); 17A Am.Jur.2d Contracts section 543 (1991).
This basic contract principle can be appropriately applied to the present case. Defendant never actually did collect garbage from the Dorchester complex; and from the time plaintiff commenced business through 1986, defendant annually reimbursed plaintiff based on a unit cost amount from $7.60 to $7.80 per apartment. The unit cost apparently varied, depending on the terms of the contract with the garbage collector hired by the Borough.[1] The amounts so paid were accepted by plaintiff without protest until 1988[2] even though they apparently bore no relationship to the amount actually paid by Dorchester for garbage collection. This conduct for twenty years after the execution of the Agreement constitutes an abandonment by both parties of that portion of section 6 of the Agreement which places any obligation on the Borough for garbage collection for two days per week, and thus renders it unenforceable.
Defendant also asserts that plaintiff's claim for reimbursement should be barred by the equitable doctrine of laches. The policy behind this doctrine is to discourage stale claims. Gladden v. Board of Trustees, 171 N.J. Super. 363, 409 A.2d 294 (App.Div. 1979); Flammia v. Maller, 66 N.J. Super. 440, 169 A.2d 488 (App.Div. 1961). To this end, laches has been found where there is unexplainable and inexcusable delay in enforcing a known right whereby prejudice has resulted to the other party because of such delay. Gladden, supra; Flammia, supra; see also Good v. Lackawanna Leather Co., 96 N.J. Super. 439, 233 A.2d 201 (Ch.Div. *172 1967); Clark v. Judge, 84 N.J. Super. 35, 200 A.2d 801, aff'd, 44 N.J. 550, 210 A.2d 415 (1965).
It is assumed that the party to whom laches is imputed has knowledge of his rights, and sufficient opportunity to assert them in the proper forum. However, by reason of his delay, the adverse party has a justifiable reason to believe that the alleged rights are meritless or have been abandoned. Because of the change in condition of relations during this period of delay, it would be unjust to permit those rights now to be asserted. Flammia, supra; 27 Am.Jur.2d Equity section 162.
A number of factors have been considered to determine whether a claim is barred by laches. Such factors include length of delay, whether the delay was reasonable or unreasonable, and changing conditions of either or both parties during the delay. Lavin v. Board of Educ. of City of Hackensack, 90 N.J. 145, 447 A.2d 516 (1982); Enfield v. FWL, Inc., 256 N.J. Super. 502, 607 A.2d 685 (Ch.Div. 1991), aff'd, 256 N.J. Super. 466, 607 A.2d 666 (App.Div.), certif. denied, 130 N.J. 9, 611 A.2d 648 (1992).
Dorchester asserted at trial that it made no claim for reimbursement before 1990, since it did not want to antagonize the Borough, hoping that the Borough would act favorably on rent control matters in which Dorchester was interested. This strategic business decision does not justify the long period of delay in asserting its rights against the Borough under the Agreement.
Moreover, Judge Stark, upon motion by defendant, barred plaintiff, pursuant to the statute of limitations, N.J.S.A 2A:14-1, from claiming any damages prior to six years from the date that the original complaint was filed. This does not prevent laches from barring recovery for garbage collection costs accrued within the statutorily limited period. In Lavin, the Supreme Court held that "where there has been an unreasonable delay, laches has been applied to defeat a claim despite the fact that the time fixed by the analogous statute of limitations has not passed." Id. at 152, n. 1, 447 A.2d 516.
*173 Plaintiff, however, maintains that Judge Stark impliedly rejected defendant's laches argument. That argument is inaccurate both factually and as a matter of law. Where laches is asserted by the defendant and is raised as an issue in the case, a full factual hearing on both sides is usually required. See Urban League v. Mayor of Carteret, 115 N.J. 536, 554, 559 A.2d 1369 (1989); 27 Am.Jur.2d Equity section 173 (1966). Certainly, in this case, laches is essentially a factual matter requiring a hearing.
After carefully considering all of the evidence, the court finds plaintiff's delay in asserting its rights to be unreasonable and inexcusable. The twenty year delay by Dorchester in endeavoring to enforce the Agreement, under the circumstances of this case, plainly constitutes laches barring not only its enforcement, but also enforcement of whatever rights Dorchester has apart from the Agreement. This is so, particularly in view of the peculiar annual cash-basis ("pay as you go") budgetary requirements applicable to municipalities, which may preclude recovery against the Borough even during the six year statute of limitations period. Lavin, supra, 90 N.J. at 153-54, 447 A.2d 516; DeHay v. West New York, 189 N.J. Super. 340, 346-47, 460 A.2d 157, (App.Div.), certif. denied, 94 N.J. 591, 468 A.2d 227 (1983).
In 1991, effective July 23, a statute was enacted, N.J.S.A. 40:66-1b (the 1991 statute), giving municipalities discretionary power to limit garbage collection service to curbside collection along public streets. It also permitted municipalities to reimburse property owners who elect not to receive municipal collection service. That statute provides:
A municipal governing body that establishes a system for the collection or disposal of solid waste pursuant to subsection a. of this section, in its discretion, may limit service furnished by it to curbside collection along public streets or roads that have been dedicated to and accepted by the municipality. The municipal governing body may also refuse to enter upon private property to remove solid waste from dumpsters or other containers. The municipal governing body, in its sole discretion, may choose to reimburse those property owners who do not receive the municipal services, but such reimbursement shall not exceed the cost that would be incurred by the municipality in providing the collection or disposal service directly.
*174 The Borough's ordinance, apparently adopted under the authority of this statute, provides for curbside collection only for apartment complexes from their dumpsters; there is no provision for reimbursement of owners who elect not to receive municipal collection service. The dumpsters must be surrounded by a fence as high as the dumpster and secured by a lock accessible only by the owner and the garbage collector.
Dorchester maintains that compliance with the ordinance is not only difficult, but also not at all practical. Hence, it refused to comply therewith and seeks, instead, reimbursement for garbage collection. Even though the Borough, in this action, as indicated, has offered to pay plaintiff one-third of its collection services, by law the Borough is not required to make any such payment.
However, such reimbursement is permissible  at least where an ordinance so provides. Property Owners, supra. In Property Owners, Judge Coleman held that the 1991 statute was constitutional and did not deny equal protection to garden apartment owners. He stated:
Contrary to the wishes of plaintiffs, the statute simply does not mandate that a municipality offer the type of "customized service" (collection from dumpsters) sought by plaintiffs.
[Id. at 543, 624 A.2d 1381.]
The court further held, in words that apply to the instant case:
Plaintiffs further claim that they are entitled to damages for money they paid for private garbage collection from April 1988, the date of plaintiffs' first written demand for services from the Township. In the alternative, plaintiffs seek the tipping fees they incurred in disposing of the garbage. We agree with the Township that plaintiffs are not entitled to damages because, under Pleasure Bay, it had no obligation to enter private property to collect garbage.
In Pleasure Bay, the apartment complex owners were denied damages for money spent for collection of garbage by private scavengers from the date the municipality rejected their demand that it furnish on-site service. Id., 66 N.J. at 82, 328 A.2d 593. Where the owners were not entitled to such services, there was no basis for a claim for damages. Similarly, in this case, because plaintiffs are not entitled to on-site collection, they are not entitled to collect damages.
[Id. at 548, 624 A.2d 1381.]
The court does, however, find that plaintiff is entitled to limited reimbursement, as set forth hereafter, based on fundamental *175 principles of fairness, despite the fact that section 6 of the Agreement is deemed abandoned and recovery for reimbursement thereunder would ordinarily be denied by reason of laches. Fairness requires that Dorchester presently be afforded the same rights with respect to garbage collection vis-a-vis the Borough as Brookchester and New Milford Village, the two other garden apartments in the Borough.
In 1990, Dorchester endeavored to discuss the matter of payment with the Borough, including the fact that the Borough appeared to have been paying the other garden apartment complexes in town tipping fees, whereas Dorchester was not being paid such fees. Such discussions did not produce any results. Accordingly, on November 20, 1990, its attorney wrote the Borough asserting, for the first time, that it expressly relied on section 6 of the Agreement. The letter stated:
In accordance with section 6 of an Agreement dated June 12, 1967 between the Borough and our client, the Borough agreed to provide garbage removal services two days a week in accordance with the present Borough's ordinances and regulations. In light of the foregoing, we would appreciate if you would forward to our client its reimbursement for 1990. We trust that when you make your calculations that you will base same upon the existing agreement with Joe DiRese & Sons, Inc. that pertains to Brookchester Apartments and New Milford Village including not only the basic service costs but all tipping and other landfill charges.
This written demand sought only reimbursement for 1990 for basic service costs, as well as tipping and other landfill charges, in accordance with the existing agreement between Joe DiRese and Sons, Inc. (DiRese), the municipal garbage collector, and the Borough, relating to Brookchester Apartments and New Milford Village. In the earlier garbage collection contract with DiRese of December 10, 1984 (the 1984 Agreement), it agreed, for $39,900, to remove and dispose of all garbage from dumpsters at Brookchester and New Milford Village for three years  January 1, 1985 to December 31, 1987  in accordance with Proposal 6.[3] The 1984 *176 Agreement further provided that the Borough shall pay the State recycling charge, the State closure charge and the Hackensack Meadowlands Development Commission (HMDC) surcharge (of $1.82 per cubic yard.)
In a subsequent agreement dated December 3, 1987, covering the period of January 1, 1988 to December 31, 1990, DiRese agreed to collect all garbage stored in dumpsters from Brookchester and New Milford Village for $55,912.50 for the three-year period. Under this agreement, the Borough was responsible for "all dumping fees, including ... State Recycling fees, State Closure Charges, and the [HMDC] Rate Averaging Surcharge." Defendant produced evidence from the Administrator and Chief Financial Officer of the Borough indicating that the Borough has paid only one-third of total tipping and dumping fees associated with collection and disposal of garbage at both apartment complexes. This evidence, although unsubstantiated, was submitted without objection and is found to be credible.
The provisions of both garbage collection agreements on their face may seem to indicate that the Borough is responsible for all of the tipping and dumping fees. But this is not at all clear, in light of the other provisions dealing with what appears to be a one-third payment for garbage collection. In any event, the actual and practical construction of the contracts show that the Borough  and apparently the other two garden apartment projects  construed them as requiring it to pay only one-third of those fees, which it did. Michaels v. Brookchester, Inc., 26 N.J. 379, 388, 140 A.2d 199 (1958); Journeymen Barbers v. Pollino, 22 N.J. 389, 395, 126 A.2d 194 (1956); Joseph Hilton and Assoc., Inc. v. Evans, 201 N.J. Super. 156, 171, 492 A.2d 1062 (App.Div.), certif. denied, 101 N.J. 326, 501 A.2d 977 (1985).
*177 On March 14, 1990, the Borough entered into an agreement with Browning Ferris Industries of North Jersey (Browning) which provided that Browning would "collect, remove and dispose of all garbage, trash and bulky waste from each residential and municipal property within Municipality [sic] two days per week" for three years. Residential property is defined as consisting of no more than four family units in a single structure and specifically excludes multi-family garden apartments. Although there is no provision for collection within any garden apartment complex, it appears that the Borough has continued to pay one-third of all garbage collection, tipping and other charges for Brookchester and New Milford Village, but not for Dorchester.
As already indicated, plaintiff seeks reimbursement for one hundred percent of tipping fees and two-thirds of garbage collection and trucking fees incurred since January 1986. This amount is contrary to the Borough's standard practice of reimbursing only one-third of both tipping, garbage collection, trucking and related fees. Furthermore, despite the statute of limitations, laches may bar plaintiff from being reimbursed for fees incurred since 1986 by reason of the peculiar legal budgetary constraints facing the Borough as a municipality.
The Borough, however, has budgeted $10,000 each year for the last few years for garbage collection and disposal at Dorchester. Furthermore, the Borough administrator and financial officer testified that the Borough had a budgetary surplus in 1993 of approximately $100,000. This is not to suggest that these funds are presently available; the Borough may have already allocated them for some other municipal purpose. Nevertheless, the court has considered the recent Borough budget and surplus in determining the extent to which reimbursement to Dorchester may be justified on principles of fairness.
It is clear from the evidence that Dorchester should be placed on an equal footing with the other garden apartment complexes in the Borough with respect to municipal garbage collection and disposal, provided this is done in an equitable *178 fashion, in light of the budgetary requirements applicable to municipalities, including the applicability of laches. The court has concluded that, in view of the foregoing, an appropriate balance of these considerations requires that Dorchester be reimbursed for one-third of all garbage collection and disposal fees (including tipping and trucking) since June 1992  i.e., for two and one-third years  as set forth in the table below:

 Total Adjusted
 Category (1/86  9/94) (6/92  9/94) 1/3 of Adjusted
Taxes
 Landfill $ 294.08 $ 0 $ 0
 Resource 2,092.56 430.50 143.50
 Host 2,650.04 1,241.24 413.75
 Resource 711.98 0 0
 Recycling 5,373.80 1,629.60 543.20[4]
Tipping Fees 123,560.37 44,703.90 14,901.30
Trucking Fees 87,580.07[5] 26,235.30[6] 13,117.65[7]
__________________________________________________________________________
TOTAL REIMBURSEMENT $29,119.40

These amounts are taken from plaintiff's evidence, which was admitted without objection. The sum of $29,119.40 takes into consideration the six-year statute of limitations, the equitable doctrine of laches, the 1984 and 1987 garbage collection agreements, and the Borough practice during and after these agreements. Cf. DeHay, supra, 189 N.J. Super. at 344-46, 460 A.2d 157 (court refused to apply laches, but reduced employee's four-year back-pay entitlement by five percent in recognition of Cap law *179 mandate). Since laches bars reimbursement of fees before June 1992, plaintiff is not entitled to recover the $750 recycling costs it incurred in 1991. Admittedly, the Borough has provided recycling to Dorchester since 1991.
A judgment will be entered in favor of plaintiff and against defendant for $29,119.40. The judgment is enclosed.
NOTES
[1] For example, the sum of $1,520 was paid for 1986; $2,130 was paid for 1987.
[2] A formal protest and demand was made in November 1990.
[3] Proposal 6 provided that DiRese would collect garbage, which was placed in dumpsters, from Brookchester and New Milford Village, two times per week for the sum of $22.80 per apartment. Both apartment complexes were required to provide garbage removal services the remaining four days per week. The combined total municipal cost charged for garbage collection at both apartment complexes was $39,900.
[4] This amount for recycling taxes probably should not be allowed, since recycling was provided by the Borough commencing in 1992; but defendant has not raised any objection thereto.
[5] This dollar amount reflects two-thirds of the total trucking fees between 1/86 and 9/94. Dorchester is seeking recovery of only two-thirds of the total.
[6] This dollar amount reflects two-thirds of the trucking fees incurred between 6/92 and 9/94.
[7] This dollar amount is derived by dividing the adjusted two-thirds amount ($26,235.30) by two.