KUSKIN, J.T.C.
On January 16, 1989, plaintiff, Town of Secaucus, and Newport City Development Co. (“NCDC”), a predecessor in interest to defendants Newport Centre, 20 River Court West Urban Renewal Corp., 30 River Court East Urban Renewal Corp., and NOC III Urban Renewal Limited Liability Co. (collectively the “Newport Entities”) entered into a settlement agreement (the “Settlement Agreement”) with respect to appeals filed by Secaucus seeking increases in the tax year 1987 assessments on various properties in Jersey City then owned by NCDC. Paragraph 4 of the Settlement Agreement (“Paragraph 4”) provided: “Secaucus will not sue [NCDC] or its successors or assigns forever with respect to the assessments placed upon its property in Jersey City.”
In these appeals, plaintiffs challenge tax exemptions granted by Jersey City to the Newport Entities pursuant to the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -20, or predecessor statutes, with respect to projects developed by the Newport Entities in Jersey City. The Newport Entities, joined by defendant Jersey City, moved for summary judgment dismissing the appeals. I denied the motions in a bench opinion on February 8, 2002 but reserved decision on the legal issue of the enforceability of Paragraph 4. This opinion addi'esses that issue. For the reasons set forth below, I hold that the Paragraph is not enforceable to bar Secaucus’s appeals.
The factual background relating to the issue now before me is as follows. In 1986, plaintiffs Secaucus and North Bergen instituted litigation in the Law Division of the Superior Court of New Jersey challenging a tax exemption granted to NCDC in connection with the development of a 1,500 unit housing project (the “1986 Litigation”). In an unreported opinion, the Law Division held that the exemption was validly granted. North Bergen Tp. *566 and North Bergen Bd. of Educ. v. City of Jersey City, Hudson County Bd. of Taxation and Newport City Dev. Corp., Dkt. No. L-24734-86PW (Law Div. Mar. 6, 1987). The Appellate Division affirmed. North Bergen Tp. v. City of Jersey City, 232 N.J.Super. 219, 556 A.2d 1255 (App.Div.), certif. denied, 117 N.J. 632, 569 A.2d 1334 (1989).
For tax year 1987, Secaueus filed appeals (the “1987 Appeals”) challenging the assessments on numerous tax lots owned by NCDC in Jersey City. In order to resolve those appeals, the parties entered into the Settlement Agreement. In addition to Paragraph 4, the Agreement provided that NCDC agreed to pay to Secaueus the sum of $165,000, to be held in escrow pending receipt of Tax Court judgments dismissing the appeals. If the judgments were not issued, the full amount was to be returned to NCDC and the Agreement rescinded. The Tax Court issued the contemplated judgments on March 17,1989.
In their motions for summary judgment, defendants asserted that, under the doctrine of res judicata and the entire controversy doctrine, the decisions by the Law Division and Appellate Division in the 1986 Litigation and the judgments entered dismissing the 1987 Appeals barred these appeals by Secaueus and North Bergen. The motions also asserted that laches and estoppel barred the appeals by all plaintiffs, and that Paragraph 4 barred Secaucus’s appeals. In my bench opinion, I denied the motions on the grounds of res judicata and the entire controversy doctrine. I reserved decision on the issues of laches and estoppel, but, on December 5, 2002, I issued my opinion in Town of Secaucus v. City of Jersey City and 101 Hudson St. Assocs. c/o Linpro Co., 20 N.J.Tax 384 (Tax 2002), in which I held that laches and estoppel, as a matter of law, did not bar Secaucus’s appeals in those matters (op. at 392). The analysis in that decision is applicable to these appeals, and requires denial of defendants’ motions based on laches and estoppel. With respect to Paragraph 4, in deciding the summary judgment motions, I ruled that a genuine issue of material fact existed as to whether all of the Newport Entities’ properties were covered by the Settlement Agreement, and, as *567 stated above, reserved decision as to whether Paragraph 4 was enforceable.
In order to determine the enforceability of Paragraph 4, I must address the following questions: A) does the perpetual duration of the Paragraph exceed Secaueus’s contractual authority and violate public policy; B) if a perpetual agreement is invalid, should I limit the duration of the agreement to a reasonable term; and C) if Paragraph 4 is unenforceable, may Secaucus retain the sum of $165,000 paid to it by NCDC.
A. TIME LIMITS ON MUNICIPAL AGREEMENTS.
The power of a municipality to enter into contracts is limited by the authority expressly or impliedly granted to it by the Legislature. Kress v. La Villa, 335 N.J.Super. 400, 410-11, 762 A.2d 682, 687 (App.Div.2000).
“[W]hüe a public body may make contracts as an individual, it can only do so within its express or implied powers and those who deal with a municipality are charged with notice of limitations imposed by law upon the exercise of that power.”
[Id. at 410, 762 A.2d at 687 (quoting Midtown Props., Inc. v. Madison Tp., 68 N.J.Super. 197, 208,172 A.2d 40, 46 (Law Div.1961)).]
In Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 133, 207 A.2d 522, 533 (1965), the Supreme Court described a municipality’s powers as those expressly granted by statute and “such other powers as ‘arise by necessary or fair implication, or are incident to the powers expressly conferred, or are essential to the declared objects and purposes of the municipality’ ”. See also West Caldwell Bor. v. Caldwell Bor., 26 N.J. 9, 31, 138 A.2d 402, 413 (1958) (stating that a municipality’s governmental and corporate or proprietary authority “is to be exercised as given [by the Legislature])”; Maese v. Snowden, 148 N.J.Super. 7, 13, 371 A.2d 802, 805 (App.Div.1977) (stating that “[n]o governing body, certainly without specific legislative permission, may divest its successors of legislative power”).
Municipal agreements having a perpetual term are not favored. In City of Newark v. Essex County Board of Chosen Freeholders, 221 N.J.Super. 558, 535 A.2d 517 (App.Div.1987), the Appellate Division stated:
*568 When a municipality is exercising its governmental powers, as opposed to its business or proprietary powers, no contract that a governing body enters will be binding upon its successors... It is well-established that “every contract is made subject to the condition that its fulfillment may be frustrated by a proper exercise of the police power.”
[Id. at 566 n. 3, 535 A.2d at 521 n. 3 (citations omitted).]
However, an agreement having a perpetual duration can be authorized by statute.
[A] municipality cannot bind itself by a perpetual contract, or a contract of unreasonable duration, unless by legislative sanction. And this is a foHiori true where ... the subject matter of the contract bears on the legislative or governmental function of the local subdivisions of government, involving as it does the exercise of the police power____
[West Caldwell Bor. v. Caldwell Bor., supra, 26 N.J. at 31, 138 A.2d at 413-14 (citations omitted).]
In Dorchester Manor v. New Milford Borough, 287 N.J.Super. 163, 670 A.2d 600 (Law Div.1994), the court stated that “a municipality’s [perpetual contract] ... [is] not necessarily ... void as against public policy, provided it is made pursuant to express statutory authority delegated to municipalities and the statute may be properly construed as containing no limitation with respect to length of time for which an agreement may be made.” Id. at 169, 670 A.2d at 603.
The statutes generally governing the duration of municipal contracts are N.J.S.A. 40A:4-3 and -57, part of the Local Budget Law, N.J.S.A. 40A:4-1 to -88, and N.J.S.A. 40A:11-15. The former statutes require a municipality to adopt an annual budget and prohibit expenditures for which no appropriation has been made. “These two sections, when read together, lead to the conclusion that a municipality ... cannot bind itself, by contract or otherwise, to expenditures for more than one year.” In re Ruvoldt, 187 N.J.Super. 81, 93, 453 A.2d 896, 902 (App.Div.1982) (citation omitted). Under N.J.S.A. 40A:11-15, contracts for the provision or performance of goods or services may not exceed twenty-four consecutive months, contracts for professional services may not exceed twelve consecutive months, and other limits apply to the duration of specific types of contracts (none of which is applicable to the Settlement Agreement). In Beverly Sewerage Authority v. Delanco Sewerage Authority, 65 N.J.Super. 86, 167 *569 A.2d 46 (Chan.Div.), aff'd, 70 N.J.Super. 575, 176 A.2d 276 (App.Div.1961), aff'd, 38 N.J. 354, 184 A.2d 864 (1962), the court held that a municipal contract entered into pursuant to a statute permitting contracts for “an unlimited time” must be “reasonable” in duration. Id. at 95,167 A.2d at 51.
In the tax appeal context, a municipality is the defendant in an appeal by a taxpayer of an assessment on property within its borders and has the express right to appeal assessments on property within its borders or located in another municipality in the county. N.J.S.A. 54:3-21. A municipality’s role in tax appeals involves exercise of the municipality’s governmental or police powers and not its business or proprietary functions. In particular, in defending or prosecuting an appeal of an assessment on property within its borders, the municipality seeks to ensure that the tax burden is equitably distributed among its residents or to ensure that the share of county taxes paid by its residents is not excessive. A municipality may limit its police powers, but it requires statutory authority to do so. Terminal Enters., Inc. v. Jersey City, 54 N.J. 568, 575, 258 A.2d 361, 366 (1969) (stating that “the officers of a municipal corporation may limit by contract their own police powers as well as those of their successors where the agreement is authorized by statute” (citations omitted)). No express statutory authority exists for a municipality to enter into a perpetual agreement waiving police power rights. Consequently, Paragraph 4 can be valid only if Secaueus had implied statutory authority to agree to the contents of the Paragraph.
Both the statutory scheme relating to tax appeals and public policy considerations militate against construing the applicable statutes as tacitly conferring such authority. Implicit in a municipality’s right to file and defend tax appeals is the authority to enter into settlement agreements. Under applicable statutes, a tax appeal judgment of a county board of taxation or the Tax Court, with certain exceptions, is binding on the municipality in which the property under appeal is located for the year under appeal and the two succeeding years. N.J.S.A. 54:3-26; N.J.S.A. 54:51A-8. Because a municipality can be bound for a period of *570 three years by a judgment with respect to an assessment, the statutes could be construed to grant implied authority to a municipality to enter into a settlement agreement having a maximum term of three years. However, a municipality may not agree as to the amount of an assessment before the applicable valuation date has arrived. See Jackson Tp. v. Marsyll of B.B. Inc., 3 N.J.Tax 386 (1981).
An agreement violates public policy under the following circumstances:
if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety. The enforcement of such agreements or contracts will generally be denied.
[Bergen County Welfare Bd. v. Cueman, 164 N.J.Super. 401, 404, 396 A.2d 620, 622 (J. & D.R. Ct.1978) (citations omitted).]
The Second Restatement of Contracts states that a provision of an agreement “is unenforceable on grounds of public policy if ... the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.” Restatement (Second) of Contracts § 178(1).
A municipality cannot by consent or contract undertake obligations or limit its powers in a manner not authorized by statute, and an attempt to do so violates public policy.
[W]hile a municipal corporation may, under proper circumstances, enter into a consent judgment the same as a private litigant, such a judgment has no conclusive effect if the municipal action was illegal or improper in any respect. The mere fact that a judgment was entered by consent does not preclude appropriate inquiry into the validity of the municipal authorization therefor. Such underlying action is subject to the same attack and review as any other governmental act, and the judgment is only as good as the authorizing action. To hold otherwise would be to insulate municipal acts from review, in derogation of the public interest, where they could be contrived to take the form of a judgment by consent.
[Edelstein v. City of Asbury Park, 51 N.J.Super. 368, 389, 143 A.2d 860, 871-72 (App.Div.1958) (citation omitted).]
See also 15 Corbin on Contracts § 1515 (Interim ed.1979) stating that: (“[I]f the making of the bargain is unlawful and forbidden, [the parties] can not cause the bargain to be lawful and enforceable by an express provision that as between themselves it shall be so.”). Cf. D.J. Miller & Assocs., Inc. v. State, 356 N.J.Super. *571 187, 811 A.2d 952 (App.Div.2002) (holding that a State agency may not, by contract, override court rules and allocate jurisdiction to the Appellate Division).
Defendants contend that no public policy considerations are involved here because, even if Secaucus was barred “forever” from challenging the assessment on the Newport Entities’ properties, any other municipality in Hudson County and any citizen in the county had the right to appeal. I reject defendants’ argument. That others have the right to appeal does not justify or validate an agreement under which Secaucus, on behalf of itself and its citizens, foregoes its right of appeal in perpetuity. Indeed, for tax years 1999 and 2000, Secaucus alone challenged the exemptions granted to the Newport Entities; no other municipality or citizen in Hudson County chose to initiate a challenge. If Secaucus’s appeals were barred under Paragraph 4, then the exemptions granted to the Newport Entities for 1999 and 2000 could not be contested.
In Spoerl v. Pennsauken Tp., 14 N.J. 186, 101 A.2d 855 (1954), the Supreme Court held to be ultra vires a deed provision in which a municipality covenanted that the lands it conveyed would not be subject to assessment for the cost of any municipal sewerage facilities. Id. at 195, 101 A.2d at 860. In the course of its opinion, the Court stated as follows:
Our own courts have adopted the view that an agreement to relieve property from taxation is contrary to basic notions of equity:
“The reason that municipal corporations cannot without express authority exempt property from taxation is that the effect of such exemption is to increase the burden upon those who are not so favored. The same effect follows where the municipality gives up any source of revenue, and the same reasoning is applicable.”
Jersey City v. North Jersey Street R. Co., 78 N.J.L. 72, 73 A. 609 (Sup.Ct.1909). The reasoning employed in the taxation equations is equally applicable to the general problem of abatement of assessments.
[Id at 193, 101 A.2d at 859.]
The agreement by Secaucus to waive “forever” its right to challenge assessments on the properties of NCDC or the Newport Entities in Jersey City is analogous to the agreement in Spoerl. Under both agreements the rights of the citizens of the municipali *572 ty are potentially prejudiced. Therefore, Paragraph 4 is against public policy, and the tax appeal statutes should not be construed as impliedly authorizing the perpetual duration of the Paragraph.
B. REASONABLE TIME.
Defendants contend that, even if Paragraph 4 is invalid as an agreement in perpetuity, the court should make the Paragraph valid by interpreting Secaucus’s covenant not to sue as remaining in effect for a reasonable period of time, specifically, the duration of the various tax exemptions granted to the Newport Entities. Secaueus responds that defendants’ argument, if accepted, would, as a practical matter, nullify any court determination that the perpetual duration of the Paragraph was invalid.
Defendants rely primarily on West Caldwell Bor. v. Caldwell Bor., supra, 26 N.J. 9, 138 A.2d 402. There, the Supreme Court interpreted a written agreement made in 1912, and amended in 1955, that conferred upon residents of West Caldwell the right to connect to a sewer system and sewer treatment plant constructed by Caldwell. In 1956, West Caldwell decided to construct its own sewer system. Caldwell sought a declaratory judgment that West Caldwell remained bound by the 1912 and 1955 agreements, neither of which set forth its duration. The Court held that the term of the agreements could be “fixed by implication,” id. at 27, 138 A.2d at 412, and that the “probable hypothesis is that the parties had in view continued performance for a reasonable time.” Ibid. The Court defined a reasonable time as “an implication of fact, and not of law, derivable from the language used by the parties considered in the context of the subject matter and the attendant circumstances, in aid of the apparent intention.” Id. at 28, 138 A.2d at 412 (citation omitted).
As distinguished from the agreements at issue in West Caldwell v. Caldwell, Paragraph 4 expressly provides that its provisions shall be in effect “forever.” Under these circumstances, I am unable to determine what “reasonable period” the parties had in mind other than perpetuity. Defendants’ suggested reasonable period is unacceptable because Paragraph 4 would have a duration *573 far in excess of what is contemplated by the tax appeal statutes. Based on the discussion above in Part A as to a municipality’s statutory authority to settle tax appeals, I would conclude that a reasonable time period should not exceed three years. Even if this time period were engrafted on Paragraph 4, Secaucus’s appeals would not be precluded because the effectiveness of the Paragraph would have expired long before the appeals were filed.
C. DISPOSITION OF THE $165,000 PAYMENT.
Pursuant to the Settlement Agreement, the Newport Entities paid Secaucus the sum of $165,000. Defendants assert that, if Paragraph 4 is invalid and unenforceable, then some or all of the payment should be refunded. Secaucus responds that no refund is appropriate because the payment was solely in consideration for dismissal of the 1987 Appeals, or because Secaucus substantially performed its obligations under the Settlement Agreement. I find that the escrow provisions of the Settlement Agreement indicate that the $165,000 payment primarily, if not totally, constituted consideration for the agreement by Secaucus to dismiss the 1987 Appeals. These provisions permitted release of the payment to Secaucus when Tax Court judgments of dismissal were issued. The payment was to be returned and the Agreement canceled if no judgments were issued. Secaucus caused the 1987 Appeals to be dismissed, and therefore, on this basis alone, may retain the payment.
Whether Secaucus substantially performed its obligations under the Settlement Agreement must be determined in light of the legal principle that NCDC and the Newport Entities are chargeable with notice that Secaucus, as a municipal corporation, had no express statutory authority to enter into Paragraph 4, and, therefore, that the enforceability of the Paragraph 4 was, at the very least, subject to doubt. When a party contracts with a municipality, the party is chargeable with notice of the legal limitations on the authority of the municipality. In Kress v. La Villa, supra, 335 N.J.Super. 400, 762 A.2d 682, the Appellate Division held that attorneys representing individual members of *574 the governing body of a municipality in criminal proceedings could not collect legal fees even though the court assumed, for purposes of its decision, that the governing body had assured the attorneys that the municipality would pay their fees. The municipality had failed to adopt a resolution and enter into a written contract as required by the applicable statutes. In denying relief to the plaintiffs, the court held that “those who deal with a municipality are charged with notice of limitations imposed by law upon the exercise of that power.” Id. at 410, 762 A.2d at 687 (citation omitted). See also 10 McQuillin on Municipal Corporations § 29.06 (3d ed. 1999) (“One entering into a contract with a municipality must ascertain whether the contract complies with the constitution, statutes, charters and ordinances so far as they are applicable” (footnote omitted).).
Professor Williston has commented that “there is no ready formula for determining what amounts to substantial performance [of a contract] in any particular case. Precise boundaries cannot be drawn, since the question turns on the facts of each case.” 15 Williston on Contracts § 44:54 (Richard A. Lord ed. 2000). “Generally, substantial performance of a contract is performance nearly equivalent to that for which the parties bargained.” Ibid. The impact of an illegal provision on the enforceability of a contract was discussed in Jones v. Gabrielan, 52 N.J.Super. 563, 146 A.2d 495 (App.Div.1958). The court quoted a portion of Section 603 of the Restatement (First) of Contracts as setting forth the following “general rule”:
A bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the primary purpose of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral tuipitude unless this result is prohibited by statute.
[Jones v. Gabrielan, supra, 52 N.J.Super. at 572, 146 A.2d at 499.]
Professor Corbin, in discussing the issue of whether an illegal provision of an agreement is divisible for purposes of determining the enforceability of the remainder of the agreement, has commented as follows:
The commonly repeated statement that a bargain that is illegal in part will be enforced as to the lawful part if the bargain is ‘divisible’ renders no good service so long as we have no workable test or definition of ‘divisibility.’ The converse *575 statement that no part of such a bargain is enforceable if the bargain is ‘entire’ is equally useless... It is only a little more enlightening to say that no part will be enforced if the unlawful is so intimately connected with the lawful as to ‘taint’ the whole. With no better generalizations than these to rely upon, the court is in fact rendering its decision on the basis of its judicial instinct for ‘justice’ or of some inarticulate major premise as to the requirements of ‘public policy.’ These are indeed a sounder basis for judicial action than are inaccurate analysis or the repetition of an ancient ‘rule’ no longer in harmony with living needs and practices.
[15 Corbin on Contracts § 1520 (Interim Ed.1979).]
Corbin’s reference to a court's pursuing its “instinct for justice” was cited with approval in Jones v. Gabrielan, supra, 52 N.J.Super. at 573,146 A.2d at 500.
Because: 1) the Settlement Agreement reflects that the $165,000 payment was related primarily to the dismissal of the 1987 appeals, 2) defendants were chargeable with notice that Paragraph 4 of the Settlement Agreement was of doubtful validity and enforceability, and 3) Secaucus caused the 1987 Appeals to be dismissed and, notwithstanding the legal limitations on its agreement not to sue as discussed above, Secaucus did not challenge any assessments on the properties described in the Settlement Agreement for approximately ten years, I conclude that NCDC and the Newport Entities have received substantial performance by Secaucus of its obligations under the Agreement. Therefore, plaintiff has no obligation to refund any portion of the $165,000 payment.
For the reasons set forth in this Opinion and in my February 8, 2002 bench opinion, defendants’ motions for summary judgment are denied.