**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1070-15T2

ROBINHOOD PLAZA, INC.,
INTERNATIONAL CHAIN ENRICO
CORP., and AVNER NETTER,

    Plaintiffs-Respondents,

v.

CITY COUNCIL OF THE CITY
OF JERSEY CITY,

    Defendant-Appellant.

_____

Submitted April 24, 2017 — Decided June 9, 2017

Before Judges Sabatino, Currier, and Geiger.

On appeal from the Superior Court of New
Jersey, Law Division, Hudson County, Docket
No. L-5825-10.

Jeremy Farrell, Corporation Counsel, attorney
for appellant (Jason T. Watson and Chaunelle
Robinson, Assistant Corporation Counsels, on
the brief).

Kates Nussman Rapone Ellis & Farhi, LLP,
attorneys for respondents (Michael B. Kates
and Cara F. Landolfi, on the brief).

PER CURIAM

    Defendant City Council of the City of Jersey (City) appeals

from the October 6, 2015 order that granted plaintiffs', Robinhood

Plaza, Inc., International Chain Enrico Corp., and Avner Netter, (collectively plaintiffs) motion to enforce litigant's rights. The City argues that the settlement agreement entered into between the parties was ultra vires, and therefore, unenforceable. We disagree and affirm.

Plaintiffs own properties on West Street located in the Journal Square area of Jersey City. In August 2010, the City adopted an ordinance, entitled the Journal Square 2060 Redevelopment Plan (plan). In pertinent part, the plan altered the zoning of plaintiffs' properties by reserving a portion of the property in Zone 2 as "open space" and restricting another portion of plaintiffs' property in Zone 4, "neighborhood mixed use," to buildings of no more than eight stories and up to 130 feet in height. Other commercial property in the Journal Square core, designated as Zone 3 "commercial center" permitted buildings as high as twenty-five stories and 265 feet.

Plaintiffs filed a complaint in lieu of prerogative writs in October 2010, challenging the legality of the plan, and contending that the "downgrade of zoning" it suffered under the redevelopment plan violated the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -73, and its constitutional rights under federal and state law.

A-1070-15T2

After two years of negotiations, the parties entered into a settlement agreement (Agreement) in July 2012. Plaintiffs "agreed to donate the land in Zone 2 to Jersey City for a public park, set aside a portion of [its] property for a pedestrian plaza, and create a 24-hour publicly accessible pedestrian easement and walkway on [its] property." In exchange, the City agreed to re-zone a portion of plaintiffs' properties to allow the construction of buildings with greater height and stories, and to vacate all sections of West Street adjacent to plaintiffs' properties. The Agreement was incorporated into a consent order dismissing the complaint without prejudice, pending implementation of the executory terms of settlement — an amendatory ordinance by the City and the dedication of land to the City by plaintiffs. The court retained jurisdiction for the limited purpose of enforcing litigant's rights.

To achieve its obligations under the Agreement, plaintiffs subsequently expended approximately $182,000 for "planning, architectural, area surveying, legal, environmental, and miscellaneous costs" and entered into three separate contracts for the sale of property in the West Street area totaling $26 million. In November 2012, the City adopted an ordinance which amended the redevelopment plan to create a new zone (Zone 11) that allowed for buildings of greater height on plaintiffs' properties.

In January 2015, the City introduced another ordinance to vacate the agreed upon portions of West Street as required under the Agreement. When the proposed ordinance met opposition from members of the public, the City Council tabled it and then unanimously voted against the ordinance.

Plaintiffs filed a motion to enforce litigant's rights, <u>Rule</u> 1:10-3, asking the court to compel the City to adopt the ordinance and comply with its obligations under the Agreement to vacate sections of West Street. Plaintiffs contended that the agreement was enforceable as a valid contract; in addition, the doctrine of equitable estoppel barred defendant from not fulfilling its obligations under the agreement in light of the extensive actions taken and expenses incurred by plaintiffs to satisfy their part of the bargain.

In response, the City argued that the settlement agreement was "ultra vires[] because it contain[ed] agreements for future Council action and such a condition impermissibly restricts the legislative function of a future Council which renders the agreement void ab initio." The City further contended that the doctrine of equitable estoppel could not be used to force the passage of an ordinance vacating West Street, as the doctrine is rarely applied against a municipality and cannot be applied if an agreement is ultra vires.

4

Following three days of hearings on the motion, Judge Barry P. Sarkisian issued an order and comprehensive written decision on October 6, 2015, granting plaintiffs' request to enforce the Agreement.[1]

In rejecting defendant's argument that the Agreement was an ultra vires contract and void ab initio, the judge noted that under the LRHL, a municipality has the power to adopt a redevelopment plan. The statute authorizes the City "to make and execute contracts and other instruments necessary and convenient to the exercise of the powers of the agency or authority." N.J.S.A. 40A:12A-22. Judge Sarkisian found that defendant's zoning concessions to plaintiffs in the Agreement were "directly related to its authority to adopt a redevelopment [plan] and enter into contracts to effectuate its purpose" of redeveloping a specific area under the LRHL.

The judge dismissed defendant's jurisdictional challenge, stating that the Agreement "unambiguously provides that this Court retains jurisdiction 'for the limited purpose of enforcing litigant's rights, if needed.'" Finally, the judge concluded that, in the alternative, equitable estoppel was warranted in light of the extensive costs plaintiffs had incurred in its

---

[1] An amended opinion was issued on December 17, 2015 with minor changes.

reliance on the Agreement and the substantial future losses of $26 million it would sustain if the ordinance were not passed. Judge Sarkisian concluded that plaintiffs had suffered a "'manifest injustice' due to the voluntary conduct of [d]efendant in failing to vacate West Street in accordance with the [Agreement]."

On appeal, the City argues that the trial judge erred in concluding that the actions of a prior municipal council could bind the legislative functions of subsequent municipal councils. The City reiterates that the settlement agreement was ultra vires, and contends that equitable estoppel may not be enforced against a municipality.

Our review of a judge's conclusions of law is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

We have reviewed the arguments presented by defendant in light of the applicable principles of law and find them to be without merit. We affirm substantially for the reasons expressed by Judge Sarkisian as reflected in his well-reasoned written opinion. We add only the following comments.

The LRHL empowers a municipal governing body to adopt a redevelopment plan. N.J.S.A. 40A:12A-4. In furtherance of that

plan, a municipality is authorized to exercise all those public and essential governmental functions necessary to effectuate the purposes of the LRHL, including entering into "all contracts . . . [it deems] necessary or incidental to the performance of" a redevelopment plan. N.J.S.A. 40A:12A-22. Here, the City determined that the greater Journal Square area was "in need of rehabilitation" and it adopted a redevelopment plan. Subsequent to plaintiff challenging the plan in a court action, the parties settled the litigation by entering into an Agreement that modified the City's redevelopment plan. Defendant's actions in resolving the litigation and modifying its plan were authorized under the LRHL, and therefore, not ultra vires.

The City's argument that the Agreement wrongfully bound future city councils is similarly without merit. Where authorized by statute, a municipality can "undertake obligations or limit its powers." Town of Secaucus v. City of Jersey City, 20 N.J. Tax 562, 570 (2003). The LRHL grant of authority to municipal bodies to "exercise all those public and essential governmental functions necessary or convenient to effectuate" a redevelopment plan permitted the city to enter into the Agreement. See N.J.S.A. 40A:12A-22; See also N.J.S.A. 40A:12A-8(f) (conferring the ability to arrange or contract with public agencies for the planning . . . or undertaking of any project or redevelopment work) and (n)

(providing municipal bodies the ability to "[d]o all things necessary to carry out its powers").

The LRHL recognizes that by their very nature, redevelopment projects require many years to come to fruition. N.J.S.A. 40A:12A-39(e) allows a municipality to "enter into agreements which[] may extend over any period, notwithstanding any provision or rule of law to the contrary, with a . . . redevelopment entity . . . respecting action to be taken by such public body pursuant to any of the powers granted by this act." The plan at issue here specified it was to remain in effect for a period of fifty years. It, therefore, would be illogical to conclude that an agreement entered into by a city council in 2012 would not extend beyond that council's term.

In light of our affirmance of Judge Sarkisian's ruling that the Agreement was not ultra vires and must be enforced, we need not reach the issue of whether equitable estoppel is available under these circumstances. We note without further comment that equitable estoppel is "rarely invoked against a governmental entity," Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000) (citations omitted), although the remedy may be warranted "where the interests of justice, morality and common fairness clearly dictate that course." Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 131

(1965) (quoting <u>405 Monroe Co. v. City of Asbury Park</u>, 40 <u>N.J.</u> 457, 463 (1963)).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION